UNITED STATES, Appellant

v

STEPHEN F. CORSON, Equipment Operator Constructionman, U. S. Navy, Appellee

18 USCMA 34, 39 CMR 34

No. 21,161

November 22, 1968

*Lieutenant H. L. Moore*, JAGC, USNR, argued the cause for Appellant, United States. With him on the brief were *Colonel C. R. Larouche*, USMC, and *Commander Walter F. Brown*, JAGC, USN.

*Commander Frank A. Nelson*, JAGC, USN, argued the cause for Appellee, Accused. With him on the brief was *Lieutenant J. Arthur Bruno*, JAGC, USNR.

## Opinion of the Court

FERGUSON, Judge:

The appellee was convicted by special court-martial, convened in the Republic of Vietnam, of one specification of wrongful possession of marihuana, in violation of Uniform Code of Military Justice, Article 134, 10 USC § 934. He was sentenced to a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $60.00 per month for three months, and reduction. The convening authority approved the punitive discharge and forfeiture portions of the sentence, as adjudged, but affirmed the confinement at hard labor for only two months. He also suspended the bad-conduct discharge for the period of confinement and twelve months thereafter, with provision for its automatic remission. The supervisory authority approved the sentence as miti-

gated. A board of review in the office of the Judge Advocate General of the Navy, with one member dissenting, set aside the findings and sentence and ordered the Charge dismissed.

This case is before us through certification of the Acting Judge Advocate General of the Navy on the following issue:

"Whether the Board of Review was correct in its determination that the marijuana cigarettes obtained from the accused were inadmissible because illegally obtained."

The facts necessary for a resolution of this issue are relatively simple and are not in dispute. On October 3, 1967, Equipment Operator Constructionman LaFave was chief petty officer in charge of a rock crusher located some 20 miles from the base camp. Communication between the two areas was by radio. On that date, while LaFave was at the base camp, his superior, Lieutenant Buntley, asked him whether he had any information reflecting that marihuana was being used in his area. When he replied in the negative, the Lieutenant told him to check into the matter and in the event he learned anything to notify the Lieutenant. Upon his return to the rock quarry, LaFave questioned several people and some of them led him to believe that in fact marihuana was being used at the site. That evening one Page reported to LaFave that he had on that date purchased ten hand-rolled Vietnamese cigarettes for $5.00 from a Vietnamese woman and had given them to the accused. Since the price of a package of stateside cigarettes was roughly twenty cents per package, LaFave believed something was out of the ordinary. He asked Page "what kind of cigarettes he had gotten and to my recollection he didn't know." LaFave unsuccessfully searched for the accused in his assigned hut and some nearby bunkers. He then requested his hut mate Chief Petty Officer Wiswell to accompany him and they proceeded to another bunker "where I suspected they were at." Looking into the bunker he saw the accused. At that point in his testimony the following pertinent colloquy took place:

"Q. [Trial Counsel]. And What did you do at this time?

"A. [LaFave]. I told Corson to come out of there.

"Q. And after Corson came out of the bunker, what if anything did you say or do to Corson?

"A. I told Corson, I said I think that you know what I want, give it to me or words to that affect [sic]. Give them to me.

"Q. And what was the reaction of the accused?

"A. Corson immediately reached over to the left pocket (demonstrating by reaching for his left pocket).

"DC: I object at this time on the grounds that the Chief interrogated the witness here and did not give him any Article 31 warning prior to this."

Objections and colloquy followed. When trial counsel stated that he had no more questions at that time but was prepared to argue the objection, defense counsel inquired of the witness:

"Q. First, immediately upon calling Corson from the bunker you did not at that time give him an Article 31 warning, is that correct?

"A. No Sir, I did not.

"Q. I have no further questions, Sir."

Subsequent to argument by both counsel, the court closed to deliberate upon the issue. When court reopened, no announcement was made but trial counsel resumed his questioning of LaFave. The latter substantially reiterated his previous testimony and when he recounted his having found Corson in the bunker, trial counsel inquired:

"Q. What if anything did you say or do to Corson at that time?

"A. I told Corson———

"DC: Sir I here reinstate my objection to the testimony of the witness, this evidence about the beginning concerns a statement of the

**35**

accused which was given without prior Article 31 warning.

"PRES: Subject to objection by any member of the court, the defense counsel's objection is overruled after consideration of arguments presented by the trial and defense counsel.

"TC: Chief I will repeat my question. What if anything did you do or say to Corson?

"A. I told Corson that I thought he knew what I was looking for and what I wanted. At that time Corson reached into his pocket and pulled out a package of cigarettes."

The cigarettes were later proved to contain marihuana resulting in accused's conviction for possession.

The board of review was of the opinion that this situation was not different from that which obtained in United States v Penman, 16 USCMA 67, 36 CMR 223, and in affinity with the situation in United States v Santiago, NCM 66–2668 (May 10, 1967),[1] on the basis of a failure to properly warn the accused as directed in United States v Tempia, 16 USCMA 629, 37 CMR 249. Accordingly, it reversed and dismissed as noted above. The dissenting member would have affirmed the conviction on the ground that the chief petty officer acted upon probable cause, in which case, he opined, "Warning of the accused, prior to 'demanding' action on the accused's part was not required. United States v Cuthbert, 11 USCMA 272, 29 CMR 88, United States v Harmon, 12 USCMA 18[0], 30 CMR 180."

Before this Court, the Government contends that the board of review erred and that the marihuana cigarettes were admissible in evidence because they were obtained as the result of a lawful search and seizure. Specifically, the Government asserts that: (A) The facts and circumstances provided probable cause for the search of the accused; (B) the senior noncommissioned officer present was authorized to proceed with the search,

because the circumstances required immediate action; (C) there was no requirement that the searcher warn the accused of his rights under Article 31, Uniform Code of Military Justice and United States v Tempia, both supra, prior to carrying out the search.

While the defense at this level refutes each claim of the Government, its essential basis for arguing the correctness of the board of review decision is that there was no probable cause for a search of this accused. Defense also asserts that the action of the accused in handing over the cellophane packet of cigarettes was a mere submission to the order of the officer and the authority with which he suddenly found himself confronted and could not be considered as a consent to search. In that regard, counsel, at trial and before this Court, contend that the demand by LaFave required a prior warning under Code, supra, Article 31, 10 USC § 831, since the physical act that followed resulted in the production of incriminating evidence (United States v Nowling, 9 USCMA 100, 25 CMR 362).

We find ourselves in agreement with trial defense counsel and with the board of review. As we view the evidence, Chief LaFave acted upon mere suspicion that accused was in possession of marihuana cigarettes. He had heard that marihuana was being used in the area and was informed of a purchase, on behalf of the accused, of Vietnamese cigarettes at a price far in excess of that charged for available American-made brands. Admittedly his source, Page, was unaware of the true nature of the cigarettes, as the latter himself so testified at trial. He "took her [the seller's] word for it that they were marijuana cigarettes . . . they looked just like any hand-rolled cigarettes to me . . . [t]hey were in a plastic wrapper, clear plastic wrapper." Page does not smoke.

These facts and circumstances strongly tend toward a determination that there was, in this case, a lack

[1] A copy of the board of review decision in United States v Santiago was appended by the Government to its brief in this case.

of probable cause to search the accused. However, we need not decide the issue for we find merit in the principal contention of trial defense counsel, that LaFave's order to Corson— "I think that you know what I want, give it to me"—was unlawful because it was not preceded by an Article 31 warning. United States v Nowling, supra; United States v Taylor, 5 USCMA 178, 17 CMR 178.

In *Taylor,* supra, the accused was reportedly in possession of marihuana. A military police investigator, along with the officer of the day, entered Taylor's hut. When they discovered that the wardrobe facilities consisted of a series of pegs on which Taylor, together with others, hung his personal effects, they asked Taylor to point out the clothing items which were his property. He complied, and, among other belongings, identified an overcoat in which two cigarettes containing marihuana were found. In holding that Taylor's action of identifying his clothing amounted to a *statement* within the meaning of Article 31, we reversed because the *statement* was not preceded by an appropriate warning.

Similarly, in *Nowling,* supra, an air policeman observed the accused seated in an off-base night club. Having earlier that day seen the accused in the Base Operations Office where he had been brought for a uniform violation, the air policeman stongly suspected that Nowling's Class "A" pass had been taken away—the usual procedure in such cases. He waited until the accused left the club and then approached him and asked to see his pass. Nowling complied with the request and produced an Armed Forces Liberty Pass in the name of another. Since this did not correspond with his identification card, he was taken into custody. We reversed his conviction for wrongful possession of an unauthorized pass with intent to deceive, citing *Taylor,* supra, for failure to give a prior warning under Code, supra, Article 31, on the ground that his conduct in producing the pass at the request of the air policeman was the equivalent of language (a statement) which had relevance to his guilt because of its content. In so doing, we specifically rejected the Government's argument that had Nowling refused to produce the pass, he could have been searched and its presence discovered. "This argument falls wide of the mark for the truth of the matter is that there was no lawful arrest present." United States v Nowling, supra, at page 104.

The case at bar is distinguishable from United States v Cuthbert, 11 USCMA 272, 29 CMR 88, for there we held that a prior Article 31 warning was not required as the order by the commanding officer that accused empty his pockets was given as incident to a lawful arrest. On this ground, we distinguished our prior decisions in *Taylor* and *Nowling,* both supra, as we do here.

Accordingly, the certified question is answered in the affirmative and the decision of the board of review is affirmed.

**Chief Judge QUINN concurs.**