UNITED STATES, Appellee

v

ARTHUR J. BORODZIK, Storekeeper Second Class
U. S. Navy, Appellant

21 USCMA 95, 44 CMR 149

No. 24,038

December 10, 1971

*Lieutenant Charles W. Corddry, III*, JAGC, USNR, argued the cause for Appellant, Accused.

*Captain John P. Proctor*, USMCR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.*, JAGC, USN.

DARDEN, Chief Judge:

The appellant appeals his conviction for larceny of 11 Government-owned aviation stopwatches. He contends that eight of the watches were improperly introduced into evidence because the Government obtained them in violation of his Article 31, Uniform Code of Military Justice, 10 USC § 831, rights and of his right to counsel.

At the time of this incident the appellant was a Storekeeper Second Class serving at the Naval Air Station in Brunswick, Maine. His wife and children lived in a civilian apartment in Quincy, Massachusetts. On Friday afternoon, May 9, 1969, the appellant arrived in Quincy intending to spend the weekend with his family. Late that evening, however, two Naval investigative agents appeared at his apartment under orders to apprehend the appellant and to recover the watches missing from Brunswick. They arrested Borodzik as soon as he answered an outer door and identified himself. They then accompanied him to his second floor apartment. There he was advised as to the nature of the offense involved, that he was a suspect, that he need not make a statement, that if he did it could be used against him, and that he had the right to consult with, and have present, selected or appointed counsel. When told that this offense could result in a court-martial the appellant stated to the investigators that he had "better get a Navy lawyer" since he did not have the money to pay for one himself.

Since the apartment had no telephone Agent Magill went to a nearby outside pay phone booth to inform Brunswick authorities of the appellant's request. Although this was contradicted by the Officer-of-the-Day, Magill testified that he asked this officer to inform the station commanding officer of appellant's request. Magill also asked what to do with Borodzik. When confinement was directed, Magill called the armed forces police in Boston to carry out this order.

During Magill's 20-minute absence Borodzik wondered aloud why he was being held, since earlier he had denied knowledge of the theft. To this, Agent Butler retorted that "there must have been a good reason" for the belief that Borodzik had taken the watches or else Butler and Magill would not have been sent to make the arrest. Butler described this exchange as a conversation rather than an interrogation because they had not specifically talked about the watches.

In contradiction, Mrs. Borodzik testified that although Butler asked about their life generally he had also talked about the theft of the watches. The appellant declared that Butler asked him if he had the watches, what they looked like, and where they had been kept on base.

When Magill returned to the apartment, he informed Mrs. Borodzik that her husband was to be removed and confined. She became ill and left the room. On her return, Magill asked to speak to her in the kitchen. There he asked if her husband had the watches. According to Mrs. Borodzik, her negative response drew his further comment, "'It would be easier on your husband if he tells us that he has them because we know that he has got them.'" Mrs. Borodzik asked if she could speak to her husband alone. When he entered the kitchen she asked, "'Do you have them?'" When he said he did, she informed the husband of the agent's comment. On cross-examination she denied telling her husband that Magill had said to her it would be easier on her husband if he admitted having the watches. But Borodzik said she repeated this to him. In any event, the appellant then went to the bedroom and returned with the eight watches.

Despite defense objection, the watches were admitted into evidence as Prosecution Exhibit 1. The military judge apparently was persuaded by the Government's contention that the turnover was voluntary and "anal-

ogous to a consent search." The Court of Military Review found that Borodzik had waived his right to counsel as promulgated by United States v Tempia, 16 USCMA 629, 37 CMR 249 (1967). That court considered his relinquishment of the watches to be voluntary.

Appellate Government counsel are aware that surrender of the watches is a "verbal act" that re-quires an Article 31 warn-ing. See United States v Nowling, 9 USCMA 100, 25 CMR 362 (1958), and United States v Corson, 18 USCMA 34, 39 CMR 34 (1968). They contend, however, that Borodzik was not interrogated on May 9, 1969. Our view of the evidence causes us to reach a different conclusion.

Under Miranda v Arizona, 384 US 436, 16 L Ed 2d 694, 86 S Ct 1602 (1966), and United States v Tempia, supra, if a per-son undergoing custodial interrogation states that he wants an attorney, the interrogation must stop until an attorney is present. Although the questioning in United States v Solomon, 17 USCMA 262, 38 CMR 60 (1967), was much more directly and obviously an interrogation than was what occurred here, in *Solomon* this Court held that an Office of Naval Intelligence agent's continued questioning after Solomon's request for counsel made a pretrial statement inadmissible.

The circumstances in the present case are comparable to those in *Solomon.* Borodzik was in custody after having been arrested. It appears that he was subjected to an indirect form of questioning or influence or both. When conversation is designed to elicit a response from a suspect, it is inter-rogation, regardless of the subtlety of the approach. In a custodial situation, pressures on an ac-cused's family are just as likely to cause abandonment of rights as are direct questions of the accused. Cf. Lynumn v Illinois, 372 US 528, 9 L Ed 2d 922, 83 S Ct 917 (1963). Little difference exists in the psychological effect of a promise of a benefit and of a statement that " 'half-guarantee[s]' " an accused his wife will not be harassed, as was the case in United States v Askew, 14 USCMA 257, 261, 34 CMR 37 (1963). In Culombe v Connecticut, 367 US 568, 6 L Ed 2d 1037, 81 S Ct 1860 (1961), one reason for the Supreme Court's prohibiting the use of a husband's confession was that his wife had been urged to plead that he tell the police the truth. After an accused has requested counsel, attempts by agents to influence his wife indirectly to accomplish what the agents could not do directly are impermissible. In such a setting, we cannot be confident that the accused's freedom of will has not been impaired.

This record fails to convince us that Borodzik knew he was waiving his right to counsel when he produced the watches after his wife's urging that had followed her conversation with Agent Magill.

Consequently, we hold that the defense challenge to the admission of the watches should have been sustained. Accordingly, the decision of the United States Navy Court of Military Review is reversed. The record of trial is returned to the Judge Advocate General of the Navy. A rehearing may be ordered.

Judge QUINN and Senior Judge FERGUSON concur.