UNITED STATES

v.

**Airman First Class John C. JOHNSTONE, FR 455–06–0267, United States Air Force.**

**ACM 22355.**

U. S. Air Force Court of Military Review.

25 July 1978.

idence relating to the accused's involvement in the theft of government property from supply channels.

Stokes testified that on 7 March 1977, he was an invitee in the accused's barracks room and saw in his locker items of apparel similar to those presented by the prosecutor at trial as the property described in Specification 5 of Charge I. The informant stated that he discussed these items with the accused and the latter admitted he had taken them out of base supply.

In response to the military judge's question as to why he happened to be looking in the accused's locker, Stokes replied:

Sir, I was instructed by Agent Garrigan, sir, to go to his room, to ask him questions, but not to lead him on which I did not lead him on; and to report anything that I saw that could be stolen or diverted from the Base Supply, sir and this is what I did, sir.

The defense objected to the testimony, arguing that under the circumstances Stokes was a "de facto" agent of the OSI who was directed by his supervising agents to do that which they knew full well they could not: question the accused without first warning him of his rights under Article 31.

The military judge, upon further ascertaining that Stokes exercised no supervisory authority over the accused in spite of his one stripe grade superiority, overruled the objection and permitted the accused's admission to remain in evidence. Upon subsequent questioning, Sergeant Stokes testified that during the 7 March discussion the accused made further similar admissions regarding his acquisition of government property identical to that described in Specification 5 of Charge I. As we read the record, all admissions made by the accused during the discussion were made in response to specific questions by Stokes relative to the source of the property he saw in the accused's locker.

■ Article 31 of the Uniform Code of Military Justice provides, in pertinent part, that before a person is asked any questions regarding an offense he is suspected of

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Wade B. Morrison.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Lieutenant Colonel William H. Seckinger, USAFR.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a general court-martial, with members, the accused was convicted of three specifications of larceny of government property and one of possession of marihuana, in violation of Articles 121 and 134 of the Uniform Code of Military Justice, 10 U.S.C. §§ 921, 934. The approved sentence is a bad conduct discharge, confinement at hard labor for three months, forfeiture of all pay and allowances and reduction to airman basic.

Appellate defense counsel contend that the accused's conviction of one of the larceny offenses (Specification 5 of Charge I) is invalid because the accused's incriminating statements to a government informant, a Sergeant Stokes, were the unlawful product of questioning by Stokes in violation of Article 31 of the Uniform Code, supra. We agree.

Sergeant Stokes was a co-worker of the accused in base supply. He was also a government informant who, over a period of time dating from January through May of 1977, supplied the Office of Special Investigations (OSI) with information and evidence

having committed, he must first be informed he does not have to make any statement. As the United States Court of Military Appeals pointed out in *United States v. Woods,* 22 U.S.C.M.A. 369, 47 C.M.R. 124 (1973), the protective ambit of Article 31 is broader in scope than the right to preliminary advice delineated, as part of the Fifth Amendment constitutional right to remain silent, by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, Article 31 is operative even when the suspect is not in custody or otherwise significantly deprived of his freedom of movement. *United States v. Woods,* supra.

Of course, Article 31 does not require threshold advice in every situation where one member of the service queries another about a crime he suspects the other has committed. Id. Such advice is mandated only when the interrogator's conduct is "official" within the ambit of the Article. *United States v. Beck,* 15 U.S.C.M.A. 333, 35 C.M.R. 305 (1965). In the words of the Court in *Beck,* at page 310:

> The ultimate inquiry in every case is whether the individual, in line of duty, is acting on behalf of the service or is motivated solely by personal considerations when he seeks to question one whom he suspects of an offense. If the former is true, then the interrogation is clearly official and a preliminary warning is necessitated.[1]

In the case at hand, our resolution of the issue is limited by Sergeant Stokes' testimony concerning the instructions he received from Agent Garrigan. Although Garrigan testified, he was not asked to confirm, deny or clarify in any way the instructions Stokes stated he was given. In consequence of Stokes' testimony, therefore, we are obliged to conclude that OSI Agent Garrigan instructed him to discreetly question the accused about property the government believed he had stolen. Manifestly, in his dealings with the accused, Stokes was not acting in a purely personal capacity nor were his questions asked out of idle curiosity. See *United States v. Carlisle,* 22 U.S.C.M.A. 564, 48 C.M.R. 71 (1973).

The government involvement and direction to its undercover informant went distinctly beyond that which was sanctioned by divided opinions of the Court of Military Appeals in *United States v. Gibson,* 3 U.S.C.M.A. 746, 14 C.M.R. 164 (1954) and *United States v. Hinkson,* 17 U.S.C.M.A. 126, 37 C.M.R. 390 (1967). In the *Gibson* case, an informant posing as a prisoner was placed in jail with the accused by government criminal investigators for the sole purpose of procuring incriminating statements. The investigators did not instruct the informant as to the type of information they expected. While confined, the informant simply asked the accused why he was in jail. In reply, the accused made admissions regarding offenses which were subsequently used against him during his trial. In sanctioning the foregoing conduct, the Court observed that the accused's admis-

---

1. In the case of *United States v. Dohle,* 1 M.J. 223, 226 (C.M.A.1975), Chief Judge Fletcher reasoned that when a questioner occupies a "position of authority" over a suspect, an inquiry into his motives will be suffice to ensure that the suspect's Article 31 protections have been observed. Judge Fletcher (with Judges Ferguson and Cook concurring in the result) determined that where a person subject to the Code questions a suspect over whom the questioner "has some position of authority of which the suspect is aware," the suspect must be advised in accordance with Article 31. In his concurrence, Judge Cook relied on *United States v. Beck,* 15 U.S.C.M.A. 333, 35 C.M.R. 305 (1965), which, as observed in the text above, emphasizes the "official" status of the questioner. In his concurring opinion, Senior Judge Ferguson pointed out that the underlying considerations of the new test enunciated by Chief Judge Fletcher were basically the same as those which prompted the official capacity test it purported to replace.

In passing, we wish to note that if we were to decide the present issue solely on the basis of the new test in *Dohle,* we would resolve it in favor of the government. It is clear in the record that though informant Stokes nominally outranked the accused three stripes to two, he occupied no position of authority over him. The one grade advantage held by the informant was in no conceivable manner a factor in the accused's decision to make incriminating admissions. See *United States v. Fountain,* 2 M.J. 1202 (N.C.M.R.1976).

sions were made in the course of a conversation between equals and followed upon the very typical question between cellmates, "What are you in for?" The Court was satisfied that the accused was not compelled by the circumstances to answer the questions asked by the informant and, thus, his statement was voluntary. The Court further declared that Article 31 is not concerned with a statement obtained through trickery or deceit when such strategem is not calculated to elicit an untrue statement.

In *United States v. Hinkson,* supra, a government informant was employed by investigating agents to help expose the black market sale of stolen Marine Corps property. The agents explicitly instructed the informant not to question suspects about anything. Subsequently, while the accused was in the waiting room of the office of criminal investigations, the informant exited an office and made a remark calculated to lead those in the waiting room to believe he was a suspect. Knowing that the accused, whom he had never met, was present for questioning, the informant then engaged him in conversation. He told the accused he was involved in the theft and sale of government property. Though he was asked no questions by the informant, the accused was moved to volunteer the information that he had stolen government property which he later sold.

The Court of Military Appeals, reiterating their *United States v. Gibson* pronouncement that the Article 31 requirement does not apply to an undercover agent who merely engages in a casual conversation with an unwary suspect, held that the accused's incriminating statement was admissible. Observing that the informant asked no questions, the Court saw no compulsions of a police atmosphere in the conversation. The record demonstrated "that the pretrial statements were freely made, without coercion or inducement and under circumstances which did not require preliminary advice as to the right to remain silent and the right to counsel." 37 C.M.R. at 392.

Here, in contrast to the foregoing cases, the informant did not simply engage the accused in ordinary conversation. Stokes asked questions; questions which were calculated to evoke incriminating responses from an accused who was suspected of having stolen the property which was the subject of the conversation. And, of utmost significance, the undercover informant's questions which evoked incriminating responses were propounded on specific instructions from the OSI.

In *United States v. Kirby,* ACM 22142 (Unpublished) (AFCMR 16 March 1977),[2] an incriminating "verbal act" consisting of the surrender by the accused of stolen property was accomplished by a government undercover agent with OSI sanction. Upon consideration of the evidence, this Court determined that the incriminating evidence was inadmissible on the basis that the OSI sanction of the informant's suggested course of action rendered his participation official for Article 31 warning purposes. See *United States v. Borodzik,* 21 U.S.C.M.A. 95, 44 C.M.R. 149 (1971).

In a manner similar to the *Kirby* reasoning, if in this instance OSI Agent Garrigan had personally gone to the accused's room and, without a proper warning, questioned him concerning the source of the property he was suspected of having stolen, there is no question that his incriminating admissions would have been inadmissible in evidence. *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967); Manual for Courts-Martial, supra, paragraph 140a (2); see *United States v. Corson,* 18 U.S.C.M.A. 34, 39 C.M.R. 34 (1968). We hold that the sending of Stokes to accomplish precisely that which the OSI could not personally do rendered Stokes' conduct "official" for purposes of Article 31, and the resultant incriminating admissions were, accordingly, inadmissible in evidence. The improper admission of the accused's statements at trial

**2.** By action dated 22 March 1977, The Judge Advocate General, United States Air Force, submitted a Certificate of Review of this Court's decision in *United States v. Kirby,* ACM 22142 (AFCMR 16 March 1977), to the United States Court of Military Appeals. The Court has not yet rendered a decision in the case.

requires reversal of the "infected" finding of guilty without regard to the other evidence of guilt. *United States v. Kaiser,* 19 U.S.C.M.A. 104, 41 C.M.R. 104, 106–107 (1969); *United States v. Hall,* 1 M.J. 162 (C.M.A.1975).

In another of their contentions of error, appellate defense counsel claim that the military judge erred in not, *sua sponte,* declaring a mistrial when an OSI agent testified that the accused had requested a lawyer upon being advised of his Article 31—*United States v. Tempia* rights. We disagree.

The record discloses that the OSI agent witness, in the course of a rather lengthy answer to a question obviously not phrased to evoke the response it did, volunteered that the accused had been advised of his rights and had requested legal counsel. Upon the conclusion of the witness' direct testimony, the military judge, *sua sponte,* advised the court members:

> Earlier this witness alluded to advising the accused of his rights and that the accused requested a lawyer. You are not to consider that in any way in this case. It is not relevant and has no bearing upon the guilt or innocence of the accused in any way whatsoever. Is there any member that cannot disregard that statement from the witness? There being none, you may cross-examine.

Neither counsel objected to the military judge's curative instruction nor moved for a mistrial.

On the basis of our examination of the record, we are convinced beyond a reasonable doubt that the erroneous allusion to the accused's exercise of his right to counsel did not contribute to his conviction. *United States v. Moore,* 1 M.J. 390 (C.M.A.1976). As noted by appellate government counsel, the accused was acquitted by the finders of fact of the only specification upon which he testified at trial. And, he was similarly acquitted by the court of one of the other charges. With respect to the charges of which he was convicted, the evidence is strong and compelling and includes properly considered admissions of guilt.

The reference to the accused's request for an attorney was fleeting and obviously not couched in terms that would provoke any adverse inferences therefrom. The only other mention of the matter consisted of the military judge's emphatic curative instruction. These circumstances convince us that the error was in this instance harmless.

We have carefully considered the remaining errors asserted by appellate defense counsel and find them without merit and warranting no discussion. On the basis of our determination of error in the consideration of the accused's admissions, the finding of guilty of Specification 5 of Charge I is set aside and, in the interests of justice, dismissed.

In consequence of this action, we have reassessed the sentence and find appropriate only so much thereof as provides for a bad conduct discharge, confinement at hard labor for two months, forfeiture of $200 per month for two months and reduction to airman basic. The findings of guilty and the sentence, both as modified herein, are

AFFIRMED.

EARLY, Chief Judge, and HERMAN and ARROWOOD, Judges, concur.