154

**UNITED STATES, Appellee,**

v.

**Richard G. HARRIS, Sergeant, U. S. Army, Appellant.**

No. 36,355.
CM 436727.

U. S. Court of Military Appeals.

July 16, 1979

Appearances: For Appellant—*Captain Paul T. Allen, Jr.* (argued); *Colonel Edward S. Adamkewicz, Jr., Major Benjamin A. Sims, Captain Grifton E. Cardin* (on brief).

For Appellee—*Captain Douglas P. Franklin* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller* (on brief).

COOK, Judge:

In accordance with his pleas, the appellant was convicted by a general court-martial, consisting of members, of absence

without authority, but contrary to such pleas, he was also convicted of voluntary manslaughter, in violation of Articles 86 and 119, Uniform Code of Military Justice, 10 U.S.C. §§ 886 and 919, respectively. Review was granted to consider whether appellant's pretrial statement was properly admitted into evidence.

Appellant was arrested on May 13, 1977, by civilian authorities on charges unrelated to the present proceedings and was detained in a civilian confinement facility. On May 18, agents of the Criminal Investigation Division, in Albuquerque, New Mexico, interrogated him. This interrogation produced the pretrial statement in question. Special Agent Parrotte testified that before questioning appellant, he advised him of his rights, as set forth in DA Form 3881,[1] and that the offense under investigation was the murder of appellant's wife. Also, prior to the interrogation, he obtained appellant's prescription sunglasses for him, which were then in the custody of police officials, because the appellant had indicated he had some difficulty in reading the agents' credentials. Appellant stated he did not desire a lawyer, and he agreed to answer the agents' questions. Both coffee and cigarettes were provided to appellant during the interrogation, which began at 0958 hours. Appellant's statement was obtained at 1125 hours, but additional time was required to transcribe it. Agent Parrotte maintained he was not aware that appellant was represented by the public defender, and he stated the agents had received a negative reply from the authorities at the civilian confinement facility to a question they asked regarding appellant's representation by counsel. Nor did appellant indicate during the interrogation that he was represented by counsel. On cross-examination, Agent Parrotte testified further as to appellant's right to counsel, as follows:

Q: Mr. Parrotte, I believe you testified that you read the back of the DA Form 3881 to Sergeant Harris.

A: Yes, sir.

Q: Did you read the portion that says you may ask for a military lawyer of your choice by name and he will be detailed for you if his superiors determine he is reasonably available?

A: Yes, I did.

Q: Did you expand or elaborate on that statement in any way?

A: I normally do. I cannot recall if I did in this specific instance.

Q: What do you normally do?

A: Normally I tell him if there's a lawyer that he's heard of—that he would like to represent him, he doesn't have to worry—if he's in another division or something—he can ask for him by name and his superiors will determine whether or not he's available.

Q: When you expand on this, do you say—do you limit the attorneys to those available to the two divisions or the corps here in Fort Hood?

A: For a specific attorney?

Q: Yes.

A: Yes, sir.

Special Agent Blair was also present during the interrogation. His testimony substantiates that of his colleague. Additionally, he testified appellant did not appear to have been physically abused, although he did appear to be "somewhat haggard." The parties stipulated that previous to the interrogation, appellant entered into an attorney-client relationship with a member of the Albuquerque Public Defender's office "in reference to the civilian criminal charges."

Appellant testified that he was held in three jails between May 13 and May 18; he explained that part of the reason for the movement was that "they wanted just to have me go before a judge." He further testified that he missed the evening meal on May 17 because he was transferred to another jail and placed in a "tank" with approximately 25 people. As a result of an altercation with some of his fellow inmates,

---

1. This form was admitted into evidence. It incorporates the rights as set forth in Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, and *United States v. Tempia*, 16 U.S.C. M.A. 629, 37 C.M.R. 249 (1967).

156

he was unable to sleep and became involved in another altercation on the following morning when his eyeglasses were broken. He further stated that he also missed breakfast on the morning of May 18. Appellant claimed that he was frightened by the agents because he had a friend at Fort Lewis, Washington, who had been "worked over" by agents of the CID, although he conceded that he was not threatened during the interrogation. He explained his failure to inform the agents that he was represented by an attorney because "I wasn't sure I had one at the time." Appellant conceded that he did not ask for food during the interrogation; nor did he tell the agents that he had been involved in a fight. Furthermore, his physical condition did not require medical attention. Finally, appellant testified that he never indicated that he desired to remain silent, nor did he request an attorney because "I didn't think I needed one."

On the basis of the foregoing evidence, the military judge ruled in an out-of-court hearing that the pretrial statement was admissible, and appellant stated that he did not desire to relitigate the issue before the court members. Appellant claims on appeal, as he did at the trial level, that the statement was inadmissible for three reasons: (1) the agents improperly restricted his right to counsel; (2) the agents were obligated to ascertain if appellant was represented by counsel and to communicate with him; and (3) the conditions of his confinement were so severe as to amount to duress and coercion.

■ Appellant asserts that Agent Parrotte improperly restricted his right to counsel by limiting the pool of lawyers to those located at Fort Hood, Texas. While Parrotte's testimony is not that precise, I assume appellant's interpretation of it is correct; but limiting the pool of available lawyers does not necessitate rejection of the pretrial statement. Appellant submits he was confused by Parrotte's explanation and concluded he was not entitled to counsel until transferred to Fort Hood. That contention is inconsistent with his trial testimo-

ny that he did not request counsel because he determined he did not need one. The fact is, appellant was specifically advised he had a right to have a lawyer during the questioning, and he voluntarily declined to exercise the right. *See United States v. Hofbauer*, 5 M.J. 409 (C.M.A.1978).

■ As to appellant's argument that the agents were obligated to ascertain the name of his civilian counsel and to communicate with him, *United States v. McOmber*, 1 M.J. 380, 383 (C.M.A.1976), is instructive. There, the Court held that

once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code.

*United States v. Lowry*, 2 M.J. 55 (C.M.A. 1976), noted that the *McOmber* requirement was predicated on an accused's right to counsel as set forth in Article 27, 10 U.S.C. § 827, rather than the Sixth Amendment. The distinction is important here because the *McOmber* rule differs from that in the civilian community. *See United States v. Newell*, 578 F.2d 827 (9th Cir. 1978); *cf. Brewer v. Williams*, 430 U.S. 387, 405–406, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). Furthermore, the civilian counsel's representation of appellant encompassed unrelated charges, which distinguishes this case from *United States v. Lowry, supra*, where the offenses were so interrelated they could not be practically separated for the purpose of an interrogation. Additionally, the present case does not involve a denial of counsel's request to consult with his client as in *United States v. Turner*, 5 M.J. 148 (C.M.A. 1978). As the existing attorney-client relationship with counsel did not encompass an Article 27 right, I conclude that the *McOmber* requirement is inapplicable to this case. In any event, the agents were unaware that an attorney-client relationship had been established, and I decline appellant's invitation to impose guidelines for, or a requirement that, an inquiry be made, although I

note that an inquiry was made in the present case.

■ Considering the effect of the alleged conditions of confinement upon the voluntariness of the statement, appellant proposes that an agent be required to inquire into the circumstances of a suspect's confinement before he initiates an interrogation. No such procedure is required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967), and I am not persuaded it is a necessary addition to the existing interrogation procedure. However, circumstances of confinement can be considered in evaluating the voluntariness of a statement obtained from a person in confinement. *United States v. O'Such,* 16 U.S.C.M.A. 537, 37 C.M.R. 157 (1967). In this case the matter was resolved against the appellant by the military judge, and I am satisfied the evidence of record amply supports his decision. *See United States v. Carmichael,* 21 U.S.C.M.A. 530, 45 C.M.R. 304 (1972). As my Brothers agree that appellant's statement was properly admitted, the decision of the United States Army Court of Military Review is affirmed.

PERRY, Judge (concurring).

As Judge Cook's opinion indicates, the appellant urges three alternative grounds for concluding that his pretrial statement to the military investigators was inadmissible in his court-martial. As to the matter of the investigators' restriction of the scope of his right to counsel of his choice, I find the appellant's trial testimony that he believed at the time that he did not need a lawyer dispositive of any claim of prejudice arising from the misadvice. *See United States v.*

*Copes,* 1 M.J. 182 (C.M.A.1975); *United States v. Whitmire,* 21 U.S.C.M.A. 268, 45 C.M.R. 42 (1972); *United States v. Turner,* 20 U.S.C.M.A. 167, 43 C.M.R. 7 (1970).

The second ground concerns the failure of the agents to ascertain that he was represented by a civilian lawyer in the charges for which he was confined in the civilian confinement facility. However, the agents did inquire of the facility authorities whether the appellant was represented and received (erroneously) a negative reply; further when the agents advised the appellant of his right to counsel in conformity with Article 31,[1] the appellant declined, giving the agents no indication that a lawyer was in any way involved in the appellant's predicament. Under these circumstances, I conclude that the agents were not "on notice" that the appellant may have been represented, *United States v. McOmber,* 1 M.J. 380, 383 (C.M.A.1976), and that they took reasonable affirmative steps to learn whether counsel was in the case prior to their interrogation of the appellant. Therefore, I find no violation of Article 27.[2] Moreover, there is no basis for concluding that there has been a violation of the appellant's Sixth Amendment[3] right to counsel under the facts of this case. *See Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

■ Finally, the facts surrounding the interrogation, taken in the light most favorable to the Government,[4] amply support a conclusion that the appellant's statement to the investigators was not involuntarily rendered.

Chief Judge FLETCHER concurs in the result.

1. Uniform Code of Military Justice, 10 U.S.C. § 831.

2. UCMJ, 10 U.S.C. § 827.

3. U.S.Const. amend VI.

4. *United States v. Lowry,* 2 M.J. 55, 58–9 (C.M.A.1976).