**UNITED STATES, Appellee,**

v.

**Ancel C. LOWRY, Private First Class, U. S. Marine Corps, Appellant.**

**No. 31,512.**
**NCM 75–0449.**

U. S. Court of Military Appeals.

Nov. 5, 1976.

Captain Paul H. Duvall, USMCR, argued the cause for Appellant, Accused.

Lieutenant Michael C. Farrow, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel P. N. Kress, USMC, and Captain W. David Blunk, USMC.

Captain Richard A. Kirby argued the cause amicus curiae on behalf of the Department of the Army. With him on a brief were Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., and Major Steven M. Werner.

## OPINION OF THE COURT

COOK, Judge:

Contrary to his pleas, the appellant was convicted by general court-martial, with members, of four specifications alleging arson, and two specifications alleging attempted arson, in violation of Articles 126 and 80, Uniform Code of Military Justice, 10 U.S.C. §§ 926 and 880, respectively. He was sentenced to a dishonorable discharge, confinement at hard labor for 5 years, total forfeitures, and reduction to E–1. The findings and sentence were approved by the convening authority, but the Navy Court of Military Review concluded that a pretrial confession was improperly admitted into evidence, and, thus, that court reversed the findings of guilty as to all the offenses except specification 1, Charge I, alleging arson of Barracks 230, Marine Corps Air Station, Cherry Point, North Carolina. We granted review on the following issues:

1. Whether this Court may reevaluate the evidence and come to its own factual conclusions concerning the admissibility of accused's statement when a constitutional question is involved.

2. Whether the accused's confession to arson was admissible with respect to the burning of Building 230.

Special Agent L. A. Barker, a Senior Special Agent of the Naval Investigative Service Residency at Cherry Point, testified that he and Special Agent Lee Atkinson interviewed the appellant on April 1, 1974. The appellant was informed that he was a suspect in the arson of Barracks 238, Marine Corps Air Station, Cherry Point, and, after being advised of his rights against self-incrimination and counsel as required

by Article 31 and *Tempia*,[1] he requested counsel and the interview was terminated. On April 19, 1974, appellant again was interviewed and advised of his Article 31-*Tempia* rights. He was further advised that he was suspected in the arson of Barracks 230, Marine Corps Air Station, Cherry Point, and for the use of marihuana. Barker specifically noted that Special Agent G. W. Aldridge, Jr., advised the appellant:

> I understand that you have been represented by Captain WHITAKER involving another arson in Barracks 238. We're not here to discuss that matter. We're here to discuss the arson in Barracks 230.

The appellant then waived his rights and subsequently executed a pretrial statement which included admissions as to the arsons of barracks 230, 231, 238, and the base post office. Barker stated that "LOWRY did not ask for the presence of counsel," and Captain Whitaker, appellant's previously appointed counsel, was never notified of the April 19 interview because it is standard Naval Investigative Service procedure that "when a man is represented by counsel in a separate and isolated investigation we don't have to notify the counsel concerning a new investigation."

Special Agent Aldridge testified that he immediately advised appellant that he was aware appellant had been questioned previously regarding an investigation into an arson at barracks 238 and that he "was aware that he [the appellant] had military counsel." Aldridge corroborated Barker's testimony regarding his advice to appellant that the investigation they wished to conduct involved the appellant's use of marihuana and an arson of barracks 230, not the arson of barracks 238. He also noted that

after the appellant was advised of his rights, he did not request counsel and Captain Whitaker was never informed of the April 19 interview.

Contrarily, the appellant submitted that when he was interviewed on April 19, he requested counsel and further indicated that he did not want to answer any more questions. The appellant also submitted he was told that the initial interview on April 1 concerned both buildings 230 and 238.[2]

The Court of Military Review concluded the pretrial statement was admissible as to the arson of barracks 230, but such statement was inadmissible as to barracks 231 and 238, as well as the post office, because the appellant was not advised on April 19 that he was a suspect as to any offenses other than the arson of barracks 230. Thus, the Court of Military Review reversed the findings, except as to the finding of guilty to the arson of barracks 230.[3] The Court of Military Review specifically held as to the interview on April 19, 1974, that the appellant had freely and voluntarily waived his rights as to the arson of barracks 230.

We turn now to the question of whether this Court may come to its own factual conclusions when a constitutional issue is involved. Article 67(d), UCMJ, 10 U.S.C. § 867(d), sets forth the following as to the Court's power to act on a case:

> In any case reviewed by it, the Court of Military Appeals may act only with respect to the findings and sentence as approved by the convening authority and as affirmed or set aside as incorrect in law by the board of review [Court of Military Review]. In a case which the Judge Ad-

---

1. Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831; *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

2. The parties have referred to testimony both before the military judge in an Article 39(a) session, and subsequently before the court members. For the purposes of this case, we have made no attempt to separate such testimony. *See United States v. England*, 21 U.S.C. M.A. 88, 44 C.M.R. 142 (1971); *United States v. Barksdale*, 17 U.S.C.M.A. 500, 503 n. 3, 38 C.M.R. 298, 301 (1968).

3. Although the Court of Military Review addressed the question of admissibility as to barracks 231, we note the appellant was found not guilty of the specification alleging arson of this barracks. He was, however, convicted of two specifications of arson as to barracks 238, one specification alleging the arson of barracks 230, and one specification alleging the arson of the post office. The two specifications involving attempted arson both related to barracks 238.

vocate General orders sent to the Court of Military Appeals, that action need be taken only with respect to the issues raised by him. In a case reviewed upon petition of the accused, that action need be taken only with respect to issues specified in the grant of review. The Court of Military Appeals shall take action only with respect to *matters of law*. [Emphasis added.]

In its first opinion, the Court clearly noted its authority was limited to correction of errors of law. *United States v. McCrary*, 1 U.S.C.M.A. 1, 1 C.M.R. 1 (1951). This conclusion was based on the language of Article 67(d), which adopted the "cardinal rule of law that questions of fact are determined in forums of original jurisdiction or by those which are expressly granted the authority by constitution or statutes." 1 U.S. C.M.A. at 3, 1 C.M.R. at 3. As the language of Article 67(d) did not expressly grant the Court authority to review questions of fact but, rather, limited its authority "to matters of law," such article precluded our review of questions of fact. *Accord, United States v. Alaniz*, 9 U.S.C.M.A. 533, 26 C.M.R. 313 (1958).

Subsequent opinions indicate the Court has uniformly limited its review to matters of law, but the issue of whether a case involves questions of law or mixed questions of law and fact is reviewable by the Court. *See United States v. Flagg*, 11 U.S. C.M.A. 636, 29 C.M.R. 452 (1960). As noted in *United States v. Bunting*, 6 U.S.C.M.A. 170, 19 C.M.R. 296 (1955), the characterization of an issue as a question of fact by lower appellate authorities does not preclude our own reexamination of the issue to determine if matters of law are involved.

The appellant submits we must independently examine the record, including disputed and undisputed facts when a constitutional right is involved. He relies on the practice of the United States Supreme Court which has indicated it independently examines the whole record when a constitutional right is involved. *See Bachellar v. Maryland*, 397 U.S. 564, 90 S.Ct. 1312, 25 L.Ed.2d 570 (1970). We note, however, that Court has shown great deference to a state court's resolution of conflicts of evidence and findings of fact. *See Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); *Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961).[4] In any event, to the extent the United States Supreme Court chooses to review a question of fact within its independent examination of the record, this authority is specifically granted by the United States Constitution, Article III, § 2. Because Article 67(d) limits our authority to matters of law, the practice of the United States Supreme Court is not controlling and we have no authority to review questions of fact.

The appellant further submits that the admissibility of a confession is always a mixed question of law and fact and is, therefore, reviewable by this Court. Recognizing that the distinction between a question of law and a question of fact is not always clearly defined, we must nevertheless avoid resolving questions of fact which are separable from a question of law. As is apparent from the summarized testimony, the present case involves an issue of credibility which is normally a question of fact and is not reviewable by the Court. *United States v. Polak*, 10 U.S.C.M.A. 13, 27 C.M.R. 87 (1958).[5] When there is no specific finding of fact by the authorities below, we

4. For an extensive discussion of the United States Supreme Court's finding of a "constitutional fact," *see* Strong, *The Persistent Doctrine of "Constitutional Fact,"* 46 N.C.L.Rev. 223 (1968), and Strong, *Dilemmic Aspects of the Doctrine of "Constitutional Fact,"* 47 N.C. L.Rev. 311 (1969).

5. In *United States v. Polak*, 10 U.S.C.M.A. 13, 27 C.M.R. 87 (1958), the Court indicated a case could conceivably exist where a witness' testi-

mony could not be accepted as a matter of law. *Id.* at 14, 27 C.M.R. at 88. Such a situation could possibly arise where testimony is inconsistent with physical fact. However, the Court has rejected an argument that testimony should be disregarded as a matter of law because it asserts an unlikely event. *See generally United States v. Kuefler*, 14 U.S.C.M.A. 136, 33 C.M.R. 348 (1963).

must regard all conflicts in the evidence, as decided, in the light most favorable to the Government. *United States v. Chase*, 1 M.J. 275 (1976); *see United States v. Collier*, 1 M.J. 358 (1976).

■ Reviewing the present case as a matter of law and considering that all evidentiary conflicts have been resolved in favor of the Government, we conclude the interrogation of appellant on April 1, 1974, related only to barracks 238 and was terminated when the appellant requested counsel. On April 19, 1974, the appellant was advised that the ensuing interrogation would relate only to barracks 230, and, although the Government agents were aware the appellant had appointed counsel, such counsel was not notified of this interview. As a result of this interview, the appellant executed a pretrial statement which implicated him in the arson of barracks 230, 231, and 238, as well as the post office. We further conclude that the appellant was advised of his Article 31-*Tempia* rights at both the interrogations and he never requested counsel or indicated he desired to remain silent during the interrogation conducted on April 19. Thus, we must determine if the failure to inform the appellant's counsel of the interrogation on April 19 rendered appellant's pretrial statement involuntary as to the arson of barracks 230.

In *United States v. McOmber*, 1 M.J. 380 (1976), the Court held that once an investigator is on notice that an attorney is representing an individual in a military criminal investigation, Articles 27 and 31 require that the attorney must be given an opportunity to be present during the questioning of his client. If such opportunity is not accorded the attorney, any statement by his client is rendered involuntary. Government counsel submit that *McOmber* is distinguishable on the basis that the same offense was involved, whereas the present case involves two separate offenses—the arson of barracks 238 on March 28, 1974, and the arson of barracks 230 on February 23, 1974. Because the initial interrogation involved only the arson of barracks 238,

Government counsel contend the rule of *McOmber* does not apply. However, this argument ignores the basis of *McOmber* which was predicated on the conclusion that an accused could not receive the effective assistance of counsel if such counsel was not allowed to be present during the interrogation of his client. Because the appellant requested and received counsel on April 1, his subsequent interrogation without the presence of such counsel renders this right meaningless.

Although *McOmber* involved only one offense, we are unwilling to make subtle distinctions that require the separation of offenses occurring within the same general area within a short period of time. Indeed, the facts of the present case demonstrate the impracticability of such subtle distinctions—although the appellant asserted his right to counsel during the initial interrogation, his right was completely abrogated by the results of the second interrogation. Such a frustration of an important right cannot be condoned.

Finally, Government counsel argue that *Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), requires an affirmance of the present case. We disagree. The United States Supreme Court in *Mosley* held that a second interrogation of a suspect after he had asserted his right to remain silent was not precluded by the Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Court noted the initial interrogation ceased after the suspect asserted his right to remain silent and the second interrogation occurred after a significant time lapse was directed toward another unrelated offense, and was conducted at another location by another officer. The present case does, however, involve related offenses, as is evident by the fact the second interrogation ultimately included matters relating to the offense involved in the original interrogation.

Furthermore, unlike *Mosley*, the appellant had asserted his right to counsel and the investigator ignored this relationship between appellant and his counsel. In

60

*McOmber*, the concurring opinion noted that the lower Federal courts had permitted the interrogation of a suspect without notification to his counsel but the military cases were " 'squarely in the opposite direction.' " 1 M.J. at 383 (Cook, J., concurring). In any event, *McOmber* was predicated on an accused's statutory right to counsel as set forth in Article 27 and not the Sixth Amendment right. Thus, even assuming arguendo, the doctrine of *Mosley*, which involved a right to remain silent rather than a right to counsel, is interpreted in a manner to also permit an interrogation without notice to counsel, it would not be controlling.[6]  *See generally United States v. Jordan*, 20 U.S.C.M.A. 614, 44 C.M.R. 44 (1971).

The decision of the United States Navy Court of Military Review is reversed. The record is returned to the Judge Advocate General of the Navy for remand to the Court of Military Review for action not inconsistent with this opinion.

Chief Judge FLETCHER and Judge PERRY concur.

---

6. In *United States v. Collier*, 1 M.J. 358 (1976), I concluded an assertion of the right to remain silent does not necessarily preclude a subsequent interview of an accused. Thus, while I have accepted the doctrine of *Michigan v. Mosley, supra*, as to the right to remain silent, an extension of this doctrine to the right to counsel would be inconsistent with such right as set forth in Article 27, UCMJ.