**UNITED STATES, Appellee,**

v.

**Aaron M. LITTLEJOHN, Jr., Sergeant,
U. S. Air Force, Appellant.**

No. 36,256.
ACM 22264.

U. S. Court of Military Appeals.

July 23, 1979.

Appearances: For Appellant—*Major Gary C. Smallridge* (argued); *Colonel B. Ellis Phillips* (on brief).

For Appellee—*Captain James R. VanOrsdol* (argued); *Colonel Julius C. Ullerich, Jr.* (on brief).

Opinion

COOK, Judge:

Appellant stands convicted by a general court-martial of making a false claim against the United States, failure to obey a lawful order, and willful disobedience of a command of his superior commissioned officer, in violation of Articles 132, 92 and 90, Uniform Code of Military Justice, 10 U.S.C.

§§ 932, 892 and 890, respectively. We granted review to consider whether the appellant's pretrial statement regarding the false claim offense was properly admitted into evidence.

The evidence of record reflects that appellant, while stationed in Incirlik, Turkey, submitted a claim on February 4, 1976, for reimbursement of expenses incurred in transporting his family from Great Falls, Montana, to John F. Kennedy Airport, New York, New York. On February 2, for the purpose of obtaining a ration card, appellant made a false official statement to the effect that his wife had accompanied him to Incirlik, Turkey. Appellant was notified on May 18 that his commanding officer intended to impose punishment under Article 15, UCMJ, 10 U.S.C. § 815, for the false statement of February 2. Punishment was imposed on June 8, but the portion of the punishment reducing the appellant to a lower enlisted grade was suspended for a specified period. However, following a hearing on August 11, the suspension was vacated because appellant had violated a regulation by purchasing merchandise on July 2 from the BX in excessive amounts.

Appellant was interviewed by agents of the Office of Special Investigations (OSI) on September 7 and 8, and this interview resulted in a statement in which the appellant admitted he had submitted a claim on February 4, but asserted that the claim was truthful. He now contends, as he did at trial, that the statement was inadmissible because the agents did not notify Major Leonard of his right to be present as counsel for appellant at the interview, as required by *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976).

The parties agree that Major Leonard represented appellant during the Article 15 proceedings, but they disagree on whether he also represented appellant as to the false claim offense. Resolution of the matter requires consideration of the testimony of both Major Leonard and the agent who interviewed the appellant.

Special Agent Colvin testified that he and a companion began the interview of appellant on September 7 by advising him of his Article 31/*Tempia*[1] rights. Appellant waived his rights and agreed to answer questions without a lawyer present. While appellant made an oral statement on September 7, he was unwilling to wait until it was reduced to writing. Thus, he returned the following day. Readvised of his rights, he signed a written statement covering what he had said the previous day. On cross-examination, Agent Colvin testified that the investigation of the false claim offense began in May 1976. He also stated that another investigation had been conducted in regard to "excessive purchases" which had been resolved by Article 15 proceedings. While the investigations uncovered some information as to the offense involving the false statement for the ration card, he asserted that offense was never the subject of an OSI investigation.

Special Agent Colvin acknowledged he was aware that appellant had been represented by Major Leonard during the Article 15 proceedings; he, therefore, asked the staff judge advocate whether the Major should be consulted prior to interviewing appellant. He explained his concern as follows:

Well, Sergeant Littlejohn had just had an Article 15, of which we were knowledgeable. We felt we were getting into a gray area. We didn't know—How far does it extend, the ADC's office? If he represents him now does he still represent him six months from now on a continuing basis? So we checked with the JAG to find out what the status was. Could we interview him without going through the ADC's office?

The staff judge advocate replied in the negative. His reason was that "this was a separate offense and the other thing was completed, finished"; therefore, the agents could interview appellant "without going

1. Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831; *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

through ADC." Agent Colvin testified he was unaware that appellant was represented by counsel as to the offense involving the false travel claim and appellant never indicated during the interview that he was represented by counsel.

Major Leonard testified that he was the area defense counsel during the period in question, and all "military justice defense matters" in the area were assigned to him. His first contact with appellant occurred a short time after May 18 in regard to the proposed action under Article 15. While investigating this matter, he was told by someone in appellant's unit that the OSI was also investigating appellant for submitting a false travel voucher, which he discussed with appellant "a couple of times" during the summer. When asked whether he was representing the appellant as to the false travel voucher, he replied:

I considered myself to be representing Sergeant Littlejohn with regard to all of his matters at that time since I was the only defense counsel on the base.

Major Leonard represented appellant during both the imposition of punishment under Article 15 and the subsequent vacation action. After the vacation proceeding, he advised appellant as to collateral alternatives for relief from that decision. Regarding the knowledge of the agents of the nature of his representation of appellant, he testified as follows:

Q [TC] Did you ever approach the OSI to formally inform them that you were representing Sergeant Littlejohn in regard to that particular offense or investigation?

A I didn't think it was necessary because, if I recall right, I had some discussions with the OSI that summer with regards to the vacation action, and during those discussions we discussed all the things that he was under investigation for.

Q Was the OSI proceeding in this matter as though these things were separate investigations?

A I don't know whether the OSI was even involved in the investigation of

the original Article 15 or not. I just don't recall. I know they were involved in the investigation of what led to the vacation and I knew they were investigating the travel voucher, and I did discuss those two things, *I believe*, with Special Agent Colvin. [Emphasis added.]

Leonard further noted he had been contacted as to a possible interview of the appellant in regard to the Article 15 proceedings, but he told the OSI agents appellant did not wish to be interviewed. Finally, he testified he learned of the pretrial statement in question when the staff judge advocate told him that "your client has made a statement."

▮ Appellant submits that the · evidence compels the conclusion that the investigators failed to comply with the requirement imposed by *United States v. McOmber, supra,* that an investigator afford counsel an opportunity to be present during an interview of an accused, if he is aware "that an attorney has undertaken to represent . . . [him] in a military criminal investigation." *Id.* at 383. The United States Air Force Court of Military Review found that the investigators had no notice that appellant was represented by counsel at the time they interviewed him in regard to the fraudulent claim offense. Specifically, the Court of Military Review held:

Here, in contrast with *McOmber* and *Lowry,* the record indicates that at the time the criminal investigators interrogated the accused concerning the fraudulent claim offense they had *no notice* he was represented by an attorney. They were only aware he had been represented by a military counsel in connection with a completed non-judicial punishment action concerning two other offenses. Although those offenses were earlier under investigation during the same approximate time period as the fraudulent claim infraction, they otherwise involved distinct and unrelated matters.

*United States v. Littlejohn,* 5 M.J. 637, 642 (A.F.C.M.R.1978) (emphasis added). As there is evidence in the record to support

that finding, we are bound by it.[2] *United States v. Lowry*, 2 M.J. 55 (C.M.A.1976). Nor does the record justify charging the agents, as appellant contends we should, with constructive knowledge of a continuing relationship with Major Leonard after termination of the vacation proceeding. *See United States v. Harris*, No. 36,355, 7 M.J. 154 (C.M.A.1979).

Certainly, the investigators were aware Major Leonard had represented the appellant during the Article 15 proceedings. Indeed, Agent Colvin consulted the staff judge advocate to determine whether Major Leonard should be regarded as appellant's counsel for the purpose of his investigation. Appellant maintains that this situation was like that of the accused in *United States v. Lowry, supra*. There, the Court held that a lawyer representing an accused with regard to a charge of arson should have been notified of a proposed interview of his client in regard to another arson. The Court observed that the two offenses were committed in "the same general area within a short period of time" and were incapable of separation by "subtle distinctions." *Id.* at 59. As the two offenses here were committed only two days apart and in the same foreign city, they, too, insists appellant, are inseparable for interrogation purposes. However, an obvious and crucial difference exists. In *Lowry*, the investigation was single and ongoing; here, prosecution of one offense was finally concluded before the interview on the other came up.

True, as Major Leonard's testimony indicates, some collateral avenues of possible relief from the vacation of the suspension of the administrative punishment of Article 15 may have been open to the accused, but that circumstance did not alter the fact that, as of the time of the interview, the Article 15 proceeding was, as the staff judge advocate advised, "completed," and no counsel was representing appellant in a criminal investigation.

Finally, appellant posits a concept of inevitability of representation as a basis for notice to Major Leonard. The initial premise is that the Major was the area defense counsel. As the Major's testimony suggests, except in an unusual situation, Air Force practice contemplates that the area defense counsel will represent an accused in all matters of a criminal nature. While I note that Major Leonard did not represent appellant in these court-martial proceedings, I may assume the reasonable likelihood that an area defense counsel will be the one to represent an accused who requests, or is required to have, a lawyer. However, *McOmber* is not concerned with probable representation; it is concerned with an existing attorney-client relationship. I am unpersuaded that the *McOmber* rule should be enlarged to anticipatory notice to the area defense counsel.

The decision of the United States Air Force Court of Military Review is affirmed.

Judge PERRY concurs in the result.

FLETCHER, Chief Judge (dissenting):

I must dissent.

The lead opinion states that at the time of the challenged interview, no counsel was representing the appellant in a criminal investigation. The Court of Military Review made no such finding of fact. The record of trial belies such a conclusion. It is unchallenged that Major Leonard had previously discussed the false travel claim offense with the appellant and that it was under investigation by government agents. I fail to see how the conclusion of the Article 15 proceedings on a different offense terminates this relationship as to the false claim offense. Moreover, there is clearly no power in the staff judge advocate to do so by oral edict. Finally, significant doubt on behalf of the government agent as to the existence of such a relationship is not in my mind sufficient to obviate its existence.

2. Special Agent Colvin testified that he was unaware of such representation. When asked whether he discussed the matter with Agent Colvin, Major Leonard testified that, "I believe" such matter was discussed. The possible conflict in the evidence was resolved against appellant.

With this in mind, it is necessary to decide whether the government agent in this case engaged in a surreptitious interrogation technique which plainly seeks to deprive an individual of the effective assistance of counsel. *United States v. McOmber*, 1 M.J. 380, 382 (C.M.A.1976). If actual notice did not exist in this case as to the existence of the attorney-client relationship between the appellant and Major Leonard, it is clear from the testimony of the government agent that significant doubt did. This is evident from his request for legal advice from the staff judge advocate, the dual nature of his investigations and his previous contact with appellant's counsel in investigations concerning a similar type matter occurring during the same period.

Where a fundamental right of the military accused under Article 27, Uniform Code of Military Justice, 10 U.S.C. § 827, is involved, I believe there is no room for the subtle distinctions engaged in by the majority. *See United States v. Lowry*, 2 M.J. 55, 59 (C.M.A.1976). It is apparent to me that the purpose of the agent's call to the staff judge advocate was to avoid, if possible, the presence of Major Leonard at the interrogation. Why else would he not call Major Leonard himself to determine the status of the relationship? Such conduct I find surreptitious and proscribed by our decisions in *McOmber* and *Lowry*.

I would reverse the decision of the United States Air Force Court of Military Review as to this specification and the sentence.