**UNITED STATES, Appellee,**

v.

**Private E-1 Bernard C. CARTER, SSN 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, United States Army, Appellant.**

**CM 441030.**

U. S. Army Court of Military Review.

18 June 1982.

---

Captain Thomas R. Peppler, JAGC, argued the cause for appellant. With him on the brief were Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, and Major Charles A. Byler, JAGC.

Captain Daniel T. Hartnett, JAGC, argued the cause for appellee. With him on the brief were Major John T. Edwards, JAGC, and Major Michael L. DeBusk, JAGC.

Before JONES, KUCERA and HANFT, Appellate Military Judges.

## OPINION OF THE COURT

### PER CURIAM:

Contrary to his plea, appellant was convicted of robbery in violation of Article 122, Uniform Code of Military Justice, 10 U.S.C. § 922. He was sentenced to a dishonorable discharge, confinement at hard labor for one year and nine months, and forfeiture of all pay and allowances. The convening authority approved the sentence.

Appellant contends that the trial judge erred in admitting testimony regarding statements he made to his battery commander while in pretrial confinement. Appellant claims that admission of his statements into evidence violated Article 31(d), 10 U.S.C. § 831(d) because he was not advised of his rights under Article 31(b) before speaking with his battery commander. Appellant also urges that the rule in *United States v. McOmber*, 1 M.J. 380 (C.M.A.1976) was violated because his battery commander did not contact defense counsel before visiting appellant in confinement under circumstances where the commander should have known the appellant was represented by counsel.

I

On 22 January 1981 appellant was placed in pretrial confinement. On 30 January 1981, appellant received a visit from his battery commander, Captain Thomas. The visit was in response to several requests made by appellant to talk about his pretrial confinement, the reasons therefor, and the possibility of release therefrom. As CPT Thomas did not seek to interrogate appellant nor otherwise to elicit information from him, he did not advise him in accordance with Article 31, UCMJ. He "simply went there on [appellant's] request to see what he had to say as far as why he wanted to be released."

The visit resulted in a conversation between appellant and his commander which lasted "two hours or more". CPT Thomas did not interrogate appellant. However, during the course of the conversation appellant did in fact discuss the reasons why he felt he should be released from confinement. According to CPT Thomas' testimony, appellant stated that he had only been involved in one of the robberies * and that

---

* Appellant was suspected of participating in at least ten robberies. While ten specifications of violating Article 122 were preferred, only the one robbery, described in the specification of

the only person who could connect him to that robbery was Private Marshall. Appellant's statement was admitted at trial over defense objection.

■ Admissibility of a statement made by an accused is predicated upon compliance with the provisions of Article 31, UCMJ. When an accused is interrogated by a person subject to the Code, the accused must be warned in accordance with Article 31(b), UCMJ. If not so warned the statement obtained is inadmissible. Article 31(d), UCMJ. Any statement secured through the "functional equivalent" of interrogation without first warning the accused of his Article 31(b) rights is "obtained" within the meaning of Article 31(d). *United States v. Dowell*, 10 M.J. 36 (C.M.A.1980). Where a person subject to the Code without warning an accused "takes action which forseeably will induce the making of a statement and a statement does result", that statement is inadmissible as the functional equivalent of interrogation. *Id.* at 40.

■ Appellant claims that his statement was obtained in violation of Article 31(b) because it was reasonable for his battery commander to expect that appellant would make a statement regarding the charges against him when visited in pretrial confinement to discuss the basis for that confinement. Conversely, the Government insists that the statement was spontaneously made to CPT Thomas who did no more than present himself to appellant at appellant's own insistence. The Government argues that the commander, acting in a neutral manner, did not take any action which forseeably would induce the making of a statement by the appellant regarding the charges against him. Thus, there could have been no reasonable expectation that appellant would make any such statement. We find the Government's position untenable.

The mere act of a unit commander visiting an accused in pretrial confinement does not necessarily tend to induce the accused to make a statement regarding the charges against him. Had appellant's battery commander only called on him in pretrial con-

finement and discussed appellant's general welfare, this case might not be before us. The fact that appellant was in confinement and his visitor was his unit commander are significant but ancillary considerations. *See United States v. Dowell, supra* at 40.

The crucial act which we must examine is the battery commander's participation with appellant in a discussion of the basis for appellant's confinement. The *sine qua non* of pretrial confinement is an offense which an accused is alleged to have committed. A belief, by whomever held, that a discussion of the reasons why an accused is in pretrial confinement and the reasons why he should be released from such confinement would not include at some point a statement by the accused regarding the charges against him is beyond the pale of reason. We believe it was inevitable that the action of CPT Thomas would induce the making of a statement by appellant. Accordingly, the absence of an Article 31(b) warning by CPT Thomas precluded the receipt of appellant's statement in evidence.

## II

■ Although the question of a *McOmber* violation is mooted by our decision in this case, we believe a few comments are in order. The Court of Military Appeals held in *United States v. McOmber, supra*, that once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel reasonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code. *Id.* at 383. The cessation of questioning is triggered by actual notice to the interrogator of actual representation by counsel. We know of no case, and none has been cited to us, which stands for the proposition that if an interrogator should have known that an accused might be represented by counsel, questioning may not begin until the interrogator ascertains whether the accused has such counsel, and if so, notifies that counsel. We would decline to so extend the *McOmber* rule.

which he stands convicted, was referred to        trial.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

KUCERA, Judge, dissenting:

## I. OPERATIVE FACTS

On 22 January 1981, the appellant Carter was placed in pretrial confinement. On 29 January 1981, First Lieutenant Peak, Battery A, 1/84th FA, preferred charges against Carter consisting of ten specifications of robbery and one specification of aggravated assault in violation of Articles 122 and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928, respectively, and informed him of such charges. On 30 January 1981, Captain Thomas, the Commander of Carter's unit, Battery A, 1/84th FA, visited Carter in the stockade. The visit was prompted by several of Carter's requests and it lasted for some two hours. Captain Thomas testified that in the course of their conversation, and in an attempt to convince him to release Carter from the pretrial confinement, Carter stated that he had only been involved in one of the robberies, and that the only person who could connect him to it was a soldier named Marshall. At trial, Captain Thomas' testimony was admitted into evidence over defense objection.

## II. CAPTAIN THOMAS WAS NOT RE- QUIRED BY ARTICLE 31(b), UCMJ, TO ADVISE CARTER THAT HE HAD A RIGHT TO REMAIN SILENT

The obligation to provide advice on the right to remain silent under Article 31(b),

UCMJ, is triggered when the purpose is to interrogate or request any statement from an accused or a person suspected of an offense.[1] Captain Thomas went to the stockade at the request of Carter "to see what he had to say as far as why he wanted to be released, why he wanted me to visit." He did not interrogate Carter nor request any statement from him. While presumably many things were said between them in the course of their two-hours long conversation, when Carter spontaneously uttered the incriminating statement, Captain Thomas told him "that he probably needed to talk to his lawyer . . ." and did not pursue it any further. Such being the case at hand, it is my view that preliminary advice on the right to remain silent was not required.

To reach an opposite result, the majority bases its opinion on characterization of the conversation between Captain Thomas and Carter as the "functional equivalent" of interrogation.

## III. CAPTAIN THOMAS' CONVERSA- TION WITH CARTER DURING THE STOCKADE VISIT, WAS NOT A "FUNCTIONAL EQUIVALENT" OF INTERROGATION

In *United States v. Dowell*, 10 M.J. 36 (C.M.A.1980) the majority held that for the purposes of affording an opportunity to the defense counsel to be present during an interrogation of accused, as mandated by *United States v. McOmber*, 1 M.J. 380 (C.M. A.1976) and it's progeny,[2] the accuser's "encounter with the accused to inform him of an additional charge, was the "functional equivalent" of interrogation.

---

1. Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831. Compulsory self-incrimination prohibited.

   (a) . . .

   (b) No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used

as evidence against him in a trial by court-martial.

   (c) . . .

   (d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

2. In *McOmber* the Court held "that once an investigator is on notice that an attorney has undertaken to represent an individual in a military criminal investigation, further questioning of the accused without affording counsel rea-

While the issues raised in *Dowell* and here are identical, their operative facts are not. Captain Thomas went to the stockade in the capacity of Carter's commander; in *Dowell*, the commander went to the stockade in the capacity of accuser. Captain Thomas was responding to Carter's pleas for a visit; in *Dowell*, the accuser went to the stockade to inform Dowell of an additional charge he had personally preferred against him. Captain Thomas' visit was in the interest of Carter's release from pretrial confinement; the accuser's visit in *Dowell* was a mandatory initial step toward trial. When Carter ever so briefly attempted to exculpate himself of ten offenses with which he was charged by admitting to the commission of eleventh, Captain Thomas did not pursue it any further and suggested that Carter get in touch with his lawyer; when Dowell began to recite his involvement in the various charges against him, his accuser commented that Dowell did not have to do so but continued to listen for some fifteen minutes while Dowell persisted in his discourse.

On the basis of these differing facts I conclude that the stockade conversation between Captain Thomas and the appellant did not rise to the level of the "functional equivalent" of an interrogation within the meaning of *Dowell*. Having so concluded, the question of *McOmber* violation is moot.

IV. THE "FUNCTIONAL EQUIVALENT" OF INTERROGATION SHOULD NOT BE EXTENDED BEYOND *DOWELL*

It is my view that any expansion of the "functional equivalent" of interrogation to cases factually dissimilar to *Dowell* would in practice eliminate commander's visits of their soldiers in pretrial confinement, and in

time, inhibit the free flow of information between commanders and their soldiers in matters having nothing to do with the violations of the Uniform Code.[3] A commander's responsibilities require that he be able to speak freely to his soldiers and find out from them the information he must have if he is to take care of their needs, teach and correct them and accomplish his unit's mission.

Any unnecessary impediment to such a flow of information would be unwise. I would affirm the findings and the sentence.

---

sonable opportunity to be present renders any statement obtained involuntary under Article 31(d) of the Uniform Code." The rule was extended to interviews of accused about offenses related to that for which counsel had been appointed. *United States v. Lowry*, 2 M.J. 55 (C.M.A.1976).

**3.** As pointed out by Judge Cook in his dissenting opinion in *Dowell*, to require Article 31(b)

warnings "whenever a commander has reason to suspect that a subordinate has engaged in conduct violative of the Uniform Code ... is likely " 'to defeat the purpose' " of a particular interchange between the commander and his subordinate that is entirely separate from investigation or prosecution of the suspected offense".