UNITED STATES, Appellee,

v.

William J. VASSAR, Senior Airman,
U.S. Air Force, Appellant.

No. 98–0321.
Crim.App. No. 32462.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 15, 1998.

Decided Sept. 27, 1999.

GIERKE, J., delivered the opinion of the Court, in which COX, C.J., and CRAWFORD and EFFRON, JJ., joined. SULLIVAN, J., filed a dissenting opinion.

For Appellant: *Captain Michael J. Apol* (argued); *Colonel Douglas H. Kohrt* (on brief); *Captain W. Craig Mullen.*

For Appellee: *Captain Tony R. Roberts* (argued); *Lieutenant Colonel Michael J. Breslin* and *Major J. Robert Cantrall* (on brief); *Colonel Brenda J. Hollis.*

Judge GIERKE delivered the opinion of the Court.

A military judge sitting as a general court-martial convicted appellant, pursuant to his conditional guilty pleas, of wrongful use of cocaine, wrongful use of marijuana, wrongful use of methylenedioxyamphetamine (ecstasy), and wrongful use of methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The military judge sentenced appellant to a bad-conduct discharge, confinement and partial forfeitures for 12 months, and reduction to the lowest enlisted grade. The convening authority reduced the confinement to 10 months in accordance with the pretrial agreement, but otherwise approved the sentence. The Court of Criminal Appeals affirmed the findings and the approved sentence in an unpublished opinion.

This Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED IN FAILING TO SUPPRESS THE RESULTS OF APPELLANT'S URINALYSIS TEST AS A RESULT OF INVALID CONSENT, AND WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN SHE RULED ON APPELLANT'S MOTION TO SUPPRESS BY CONSIDERING EVIDENCE ON THE ISSUE OF CONSENT "IN THE LIGHT MOST FAVORABLE TO THE PROSECUTION."

We hold that the military judge erred by applying the wrong legal standard, but the error was harmless under the specific facts of this case.

*Factual Background*

On April 15, 1996, appellant was scheduled for duty beginning at 7:00 a.m. At about 7:45 a.m., he telephonically informed his unit that he had been kicked in the head playing rugby, did not feel well, and was going to sick call. Senior Master Sergeant (SMSgt) Ross overhead the conversation and intervened, expressing concern that if appellant had suffered a concussion, he should not try to drive.

SMSgt Ross drove to appellant's house and took him to the emergency room at the base hospital. While in appellant's house, SMSgt Ross had noticed the odor of stale marijuana, but he said nothing about it to appellant. Appellant conversed normally and "looked fine" to SMSgt Ross.

While appellant was being examined by a doctor in the emergency room, SMSgt Ross called the first sergeant, Chief Master Sergeant (CMSgt) Johnson, and told him that appellant had suffered a head injury, that he had taken appellant to the emergency room, and that while in appellant's house, he "smelled the stench or the odor of marijuana." CMSgt Johnson told SMSgt Ross to stay at the emergency room while he called the base legal office.

Appellant was diagnosed as having suffered a "closed head injury" and "probable post-concussive syndrome." After appellant had been examined, SMSgt Ross told him that they needed to wait in the emergency room. CMSgt Johnson arrived about 30 minutes later. SMSgt Ross testified that CMSgt Johnson told appellant, "Due to the circumstances around your injury, we need ... you ... to consent to a urinalysis." CMSgt Johnson testified that he asked appellant, "Due to your injury, would you consent to a urinalysis test?" Ross testified that appellant "said 'yes' almost immediately." No one advised appellant of his rights under Article 31, UCMJ, 10 USC § 831, or informed him that SMSgt Ross had smelled marijuana in his house.

Appellant, CMSgt Johnson, and SMSgt Ross went to the laboratory in the hospital, where CMSgt Johnson asked the laboratory technician for a consent form. The technician replied that the hospital did not have consent forms, but that the Security Police usually provided them. Based on his oral consent, appellant was asked to give a urine sample, and he did so in the presence of SMSgt Ross. SMSgt Ross testified that appellant had not been advised of his right to withdraw his consent at the time he provided the sample. While appellant was providing the sample, he and SMSgt Ross joked about

the fact that "it's kind of silly, with a man watching a man.".

After appellant provided the sample, they went to the unit orderly room, where appellant signed a consent form and SMSgt Ross witnessed it. SMSgt Ross and appellant took the consent form to the hospital laboratory, but the technician refused to accept it because it was not filled out correctly. SMSgt Ross thought that appellant was present when the technician refused to accept the form, but he wasn't sure. They returned to the orderly room where SMSgt Ross told CMSgt Johnson, in appellant's presence, that the laboratory would not test the sample without a properly executed consent form. They executed a second consent form, signed by appellant and witnessed by CMSgt Johnson and SMSgt Ross.

Both of the written consent forms executed by appellant substantially recite that he was being asked to give "consent for body fluid for urinalysis drug test due to an injury." Both forms recite the following:

> I know that I have the legal right to either consent to a search, or to refuse to give my consent.
>
> &ast; &ast; &ast;
>
> Before deciding to give my consent, I carefully considered this matter. I am giving my consent voluntarily and of my own free will, without having been subjected to any coercion, unlawful influence or unlawful inducement and without any promise of reward, benefit, or immunity having been made to me.

Technical Sergeant (TSgt) Stephen Potter, appellant's supervisor, testified that appellant was interviewed by agents of the Air Force Office of Special Investigations after he provided the urine sample. Appellant then knew that the urine had tested positive. TSgt Potter testified that appellant told him that "if he'd known that the test was going to be positive, he would have refused it."

Appellant testified that, when CMSgt Johnson came to the hospital, "[h]e said that he needed my consent, due to an injury, and that it was policy." He did not testify about any matters except what CMSgt Johnson said. Appellant did not say whether he would have consented absent mention of the injury or the "policy."

The military judge made extensive findings of fact, which she concluded with the following:

> Based on the foregoing facts, considering the evidence in the light most favorable to the prosecution, in accordance with the [sic] *United States v. Lowry*, at 2 MJ 55, I find the Government has established, by clear and convincing evidence, that the accused's consent was voluntary.

After reciting her rationale, she concluded her ruling by stating:

> Having observed the witnesses in court, their demeanor and appearance, I am satisfied that the Government has established the accused's consent was voluntary, by clear and convincing evidence.

Appellant now argues that the military judge applied the wrong legal standard when she viewed the evidence in the light most favorable to the Government. He further argues that his consent was not voluntary and the military judge's finding of voluntary consent was clearly erroneous.

The Government argues that any error associated with the military judge's use of the phrase, "in the light most favorable to the prosecution," was harmless because the evidence of voluntary consent was overwhelming.

*Discussion*

■ Mil.R.Evid. 314(e)(5), Manual for Courts–Martial, United States (1995 edition),* requires that consent to a search "be shown by clear and convincing evidence." *See United States v. Kitts*, 43 MJ 23, 28 (1995). The prosecution has the burden of proving that consent was freely and voluntarily given. *Bumper v. North Carolina*, 391

---

* All Manual provisions are cited to the version applicable at trial. The 1998 version is un-

changed, unless otherwise indicated.

U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968).

▮▮ Whether a purported consent is voluntary must be determined from the totality of the circumstances. Mil.R.Evid. 314(e)(4); *Schneckloth v. Bustamonte*, 412 U.S. 218, 248–49, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Kitts, supra* at 28. There is no requirement to give an Article 31 warning before asking for consent. *United States v. Goudy*, 32 MJ 88, 91 n. 2 (CMA 1991). Failure to specifically advise a person of the right to refuse consent is an important factor, but is not determinative. *Goudy*, 32 MJ at 90. It is permissible to use trickery to obtain consent so long as it does not amount to coercion. *See United States v. Richter*, 51 MJ 213 (1999); *United States v. Salazar*, 44 MJ 464, 468–69 (1996).

▮▮ We review a military judge's ruling on a motion to suppress for abuse of discretion. "We will reverse for an abuse of discretion if the military judge's findings of fact are clearly erroneous or if [the] decision is influenced by an erroneous view of the law." *United States v. Reister*, 44 MJ 409, 413 (1996), quoting *United States v. Sullivan*, 42 MJ 360, 363 (1995); citing *Kitts*, 43 MJ at 28; *United States v. Cardenas*, 9 F.3d 1139, 1147 (5th Cir.1993). Consent "is a factual determination that will 'not be disturbed on appeal unless it is unsupported by the evidence or clearly erroneous.'" *United States v. Radvansky*, 45 MJ 226, 229 (1996), quoting *United States v. Kosek*, 41 MJ 60, 64 (CMA 1994).

▮▮ In *United States v. Lowry*, 2 MJ 55, 58–59 (1976), this Court held: "When there is no specific finding of fact by the authorities below, we must regard all conflicts in the evidence, as decided, in the light most favorable to the Government." Where there are findings of fact, we review the evidence "in the light most favorable to the Government." *Kitts*, 43 MJ at 28.

*Lowry* and *Kitts* set out our appellate standard of review, not a trial standard for resolving questions of fact. In this case it appears that the military judge may have mingled the appellate standard for reviewing findings of fact with the trial standard for making findings of fact. We agree with appellant that the military judge erred if she evaluated the evidence in the light most favorable to the Government.

A finding of consent based on an incorrect legal test is an abuse of discretion. *Reister, supra* at 413. In this case, however, we are satisfied beyond a reasonable doubt that any incorrect view of the law held by the military judge was harmless, because there is no evidence suggesting a lack of consent. Assuming without deciding that any error implicates the Fourth Amendment and thus is constitutional error, we are satisfied beyond a reasonable doubt that the error was harmless. *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *United States v. Adams*, 44 MJ 251, 252 (1996).

Appellant immediately gave oral consent when asked for it. Notwithstanding his head injury, he was aware of his surroundings and conversed normally. The atmosphere was non-coercive and sometimes light-hearted, as reflected by the joking about the urinalysis. He signed the first written consent form, which advised him that he had the right to refuse consent. He signed the second consent form, knowing that the urine sample would not be sent to the laboratory unless he consented. Most persuasively, his comment to TSgt Potter, that he would have refused the test if he had known it would be positive, demonstrates that he was aware of his right to withhold consent. Even in his trial testimony, he stopped short of testifying that he did not voluntarily consent. There simply was no conflicting evidence to resolve. On this record, we conclude that any erroneous view of the law held by the military judge was harmless beyond a reasonable doubt.

*Decision*

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

SULLIVAN, Judge (dissenting):

I dissent. I agree with the majority that the trial judge committed error by using the wrong legal standard when she evaluated the evidence in deciding the motion to suppress.

Unlike the majority, I cannot find that this key legal error was harmless. The undisputed facts surrounding giving the consent when viewed through the eyes of a reasonable person are rather a close call on the existence of voluntary consent. I don't see how the majority can say that it was harmless for the judge to weigh the facts at the suppression hearing using a clearly wrong legal standard. If the judge had used the right standard, perhaps the judge would have suppressed the urinalysis evidence.* Without the urinalysis evidence, the prosecution had no case at all. Accordingly, the judge's error cannot be viewed as harmless.

It is important to note that this error was not even mentioned at the court below or uncovered by that court in its review. This error was first uncovered by our Court in its review and the issue was granted as a specified issue by our Court. Thus, the court below with its special factfinding power has never had the opportunity to examine whether the judge's error was harmless. I dissent because in my view the facts and fair play required our Court (a court of law) to remand this case to the court below to let them use their statutory powers to determine whether the trial judge's error was harmless or whether that error deprived appellant of a full and fair consideration of his motion to suppress.

If the court below finds the error was *not* harmless, perhaps then that court should remand the case to the trial level for an evidentiary hearing where this appellant could have his rightful fair and legally correct hearing on his suppression motion.

---

\* The facts that were presented to the judge at the fatally flawed suppression hearing do raise evidence that could lead a reasonable person to believe that there might not have been voluntary consent to the urinalysis. The fact that appellant at the hospital was diagnosed as having "post-concussive syndrome" may lead a factfinder to rule that appellant did not have the full mental faculties to give voluntary consent. The fact that CMSgt Johnson, appellant's First Sergeant, and SMSgt Ross, appellant's immediate supervisor, took appellant to a small room in the hospital to ask for his consent may lead a factfinder to find this procedure a coercive enough military environment to void the consent. The further fact that appellant was given the impression that the urinalysis was part of the medical treatment for his head injury may alone lead a factfinder to rule that tricking a injured person to consent to a urinalysis when he is at the hospital for a head injury may not be a voluntary act. The person in the hospital may believe that giving some of his body fluids for testing was a necessary medical procedure in order to receive proper medical treatment. All of the above facts do raise the question of voluntariness and should have been presented to a factfinder who was using the correct legal standard to view the facts.