UNITED STATES, Appellee,

v.

Specialist Four William A. HARTSOCK,
SSN 224–76–1300, United States
Army, Appellant.

SPCM 16545.

U. S. Army Court of Military Review.

23 Sept. 1982.

Major Raymond C. Ruppert, JAGC, Captain Gary D. Gray, JAGC, Major James F. Nagle, JAGC, and Captain Guy J. Ferrante, JAGC, were on the pleadings for appellant.

Major John T. Edwards, JAGC, Major Michael L. DeBusk, JAGC, and Captain Michael R. Smythers, JAGC, were on the pleadings for appellee.

Before MELNICK, McKAY and LEWIS, Appellate Military Judges.

OPINION OF THE COURT

McKAY, Judge:

This case is before the Court for mandatory review pursuant to Article 66, Uniform

Code of Military Justice, 10 U.S.C. § 866 (1976). Specialist Four Hartsock, the appellant, was convicted by a special court-martial of conspiring to sell marihuana in the hashish form (Charge I), possession of marihuana in the hashish form on 30 January 1981, and possession, sale and transfer of marihuana in the hashish form on 9 January 1981 (Charge II). The convening authority approved the adjudged sentence of reduction to the grade of E–1, confinement for three months, forfeiture of $334.00 pay per month for three months, and a bad-conduct discharge.

The appellant asserts there were three errors at his trial. First, he contends that the military judge erred by admitting an incriminating statement made after the assertion of his right to counsel, and therefore obtained in violation of that right. Second, he contends that the military judge erred by not dismissing Specifications 2 and 4 of Charge II (wrongful possession and transfer of hashish) because they are multiplicious with Specification 3 (sale of the hashish). Third, he contends that the military judge erred by denying a motion for a finding of not guilty to Charge I, and that, alternatively, the evidence is insufficient to support a finding of guilty to this offense. We find no merit to the issue of multiplicity; because of our disposition, favorable to the appellant, of the right to counsel issue, it will not be necessary to consider the merits of the third assertion of error.

The contested statement relates only to Charge I and its specification, conspiracy to sell marihuana in the hashish form. The facts pertaining to the circumstances under which the statement was given are not in dispute. They establish that, Hartsock having been apprehended for possession of hashish and involvement in a conspiracy to sell more, was taken to a local Criminal Investigation Command (CID) office. There he was advised of his right to consult with a lawyer and of his rights against self-incrimination under Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831 (1976). Hartsock stated that he wanted to consult with a lawyer "before being questioned further". His interrogator, Military Police Investigator Griffeth, did not immediately terminate the interview, instead he remarked as follows:

> I advised him that there had been a number of people ... apprehended and ... that after he talked to an attorney he might want to get back ... [to] the prosecutor of the case ... and as I put it to him "cop a plea" or "make a deal ..." as far as his testimony goes.

Record at 13. At the trial Griffeth explained that he did not expect his statement to produce a response by the appellant, and that it was not an attempt to elicit any information. He acknowledged, however, that he did point out to Hartsock that if someone else offered the prosecutor "a deal" before he did, that person's offer "would probably be accepted" and no others would be needed. Hartsock then got up, apparently to leave, but turned to Griffeth and told him that earlier in the evening he had been in the room of Private Gay, a fellow conspirator, when Gay and another man had cut up a piece of hashish. Investigator Griffeth asked Hartsock if he thought there was any hashish left in the room. Hartsock replied that when he left the room there had been some small particles on the nightstand. This was verified by the seizure of a small amount of hashish during a subsequent search of Gay's room. At the trial Hartsock's motion to suppress his statement to Griffeth was denied, and Griffeth's testimony was stressed by the trial counsel in his closing argument on findings as linking Hartsock to the conspiracy.

We agree with Government counsel that with respect to the admissibility of the contested statement, the basic issue is whether Hartsock was "interrogated" in violation of the standards promulgated by the Supreme Court in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *accord*, *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). The Government argues that Hartsock volunteered the statement—that it was unrelated to Griffeth's comments, and was totally spontaneous—thus waiving his previously asserted *Miran-*

da rights. We find that argument to be resourceful, imaginative and hopeful, but not realistic.

 . The term interrogation refers "not only to express questioning, but also to any words or actions" by the police that they "should know are reasonably likely to elicit an incriminating response from the suspect". *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *United States v. Borodzik,* 21 U.S.C.M.A. 95, 44 C.M.R. 149 (1971); *see United States v. Dowell,* 10 M.J. 36 (C.M.A.1980). Contrary to the argument of the Government, we find it difficult to characterize the actions and statement of Investigator Griffeth merely as "subtle compulsion", a term used by the Supreme Court in *Innis* to distinguish the police action in that case from interrogation. Although initially Griffeth's remarks invite Hartsock to see an attorney first, their true tenor dissuades him from doing that by proposing that he get back to the prosecutor and "cop a plea" before anyone else can do so, and pointing out that the first one to make such an offer will probably have it accepted. As we see it, Griffeth's remarks to Hartsock were designed specifically to obtain the response that was received. Thus, if not an ingenious and subtle form of interrogation, they were the functional equivalent. We note that the response led Griffeth immediately to ask a question of Hartsock that was, as he testified, for the purpose of obtaining evidence against Hartsock or Gay. Griffeth made no attempt to readvise Hartsock of his rights or to point out that he was waiving his rights by answering any questions. Hartsock's response to the question led to the seizure in Gay's room of a small amount of marihuana in the hashish form—a fact that was brought to the attention of the members during the trial and tied into the conspiracy charge by the prosecution in its closing argument.

 Having once expressed his desire to consult with counsel or deal with the police only through counsel, a person in custody "is not subject to further interrogation by the authorities until counsel is made availa-ble to him", unless he "initiates further communication, exchanges, or conversations with the police". *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The actions of Investigator Griffeth initiated the exchange with the appellant and violated this principle of law. Moreover, this violation prejudiced the appellant because the resulting statement cut to the heart of the conspiracy offense. We cannot perceive of anything more damaging to the appellant's case than his admission that he was present in the room of a fellow conspirator at the time marihuana in the hashish form—the object of the conspiracy being to sell this same marihuana—was being cut into small pieces. Significantly, the appellant's follow-on statement led to the recovery of part of the hashish. The statement and physical evidence put the icing on the Government's cake and undoubtedly led to the guilty verdict for Charge I and its specification. Under these circumstances that verdict cannot be allowed to stand.

The findings of guilty to Charge I and its specification are set aside, and the charge and specification are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the remaining charge and specifications and the entire record, the Court affirms the sentence.

Senior Judge MELNICK concurs.

LEWIS, Judge, concurring in part and dissenting in part:

I agree with my brothers in their disposition of the multiplicity issue. We part company, however on that involving the admissibility of the appellant's statement to the military police investigator. My disagreement is solely in interpreting the facts to be applied to the test formulated by *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), and *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977).

The investigator's remark to the appellant quoted by the majority was *not* reasonably likely to elicit an incriminating re-

sponse from the suspect then and there. Nor did the investigator subjectively believe it would. R. 14. By any test, it was designed to precipitate a "foot-race" to the *prosecutor* (not even to the police) *after* the suspect had seen an attorney. The entire tenor of the remark dealt with people offering "deals" or "copping" pleas with the prosecutor, a practice this suspect (an experienced 28-year old military policeman with a GT score of 141 and one year of college education) clearly must have known was lawyers' business.

I would hold that the appellant's ensuing statement was spontaneous, was not elicited in violation of the *Innis* and *Brewer* standard and reflected a free, knowing and intelligent waiver under Military Rule of Evidence 306(g)(1).

Because of my brothers' disposition of the statement issue, I too do not reach the sufficiency of evidence issue.

TO THE JUDGES OF THE UNITED STATES COURT OF MILITARY APPEALS:

1. Pursuant to Article 67(b)(2), Uniform Code of Military Justice, the record of trial and decision of the United States Army Court of Military Review in the above-entitled case are forwarded for review.

2. After appellee entered mixed pleas, a special court-martial composed of officer members convicted him of conspiracy to sell marijuana in the hashish form, wrongful possession (two specifications), transfer, and sale of marijuana in the hashish form, violations of Articles 81 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 934. The convening authority approved the adjudged sentence of a bad conduct discharge, confinement for three months, forfeiture of $334.00 pay per month for three months, and reduction to Private E–1. The United States Army Court of Military Review set aside Charge I and its specification (conspiracy), affirmed the remaining findings of guilty, and affirmed the sentence. *United States v. Hartsock*, 14 M.J. 837, S.P.C.M. 16545 (A.C.M.R. 23 September 1982).

3. It is requested that action be taken with respect to the following issue:

WHETHER THE UNITED STATES ARMY COURT OF MILITARY REVIEW CORRECTLY APPLIED *RHODE ISLAND v. INNIS*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), IN ITS DETERMINATION THAT APPELLEE WAS INTERROGATED.

/s/ Hugh J. Clausen
HUGH J. CLAUSEN
Major General, USA
The Judge Advocate General

Received a copy of the foregoing Certificate of Review this 7th day of October, 1982.

/s/ John T. Edwards
Appellate Government Counsel
U.S. Army Legal Service Agency
5611 Columbia Pike
Falls Church, Virginia 22041

/s/ R. Rex Brookshire II
Appellate Defense Counsel
U.S. Army Legal Service Agency
5611 Columbia Pike
Falls Church, Virginia 22041