UNITED STATES, Appellee,

v.

Private (E–2) Otis B. HARRIS, Junior,
SSN 573–11–1258, United States
Army, Appellant.

SPCM 17338.

U.S. Army Court of Military Review.

13 May 1983.

Colonel Edward S. Adamkewicz, Jr., JAGC, Captain David M. England, JAGC, and Captain Paul J. Moriarty, JAGC, were on the pleadings for appellant.

Lieutenant Colonel John T. Edwards, JAGC, Captain Patrick M. Flachs, JAGC, and Captain John L. Plotkin, JAGC, were on the pleadings for appellee.

Before O'DONNELL, FOREMAN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

WERNER, Judge:

Contrary to his pleas, appellant was found guilty of wrongful possession and sale of marijuana, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1976). He also pled guilty to and was convicted of assault and battery, in violation of Article 128, Uniform Code of Military Justice, 10 U.S.C. § 928 (1976). His sentence, which was approved by the convening authority, provides for a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $100.00 pay per month for six months, a fine of $1,500.00 and reduction to the grade of Private E–1.

## I.

On the morning of 8 July 1981, forty-five plastic baggies containing 150 grams of marijuana were discovered among appellant's possessions during a scheduled health and welfare inspection. The inspectors notified the military police desk sergeant who dispatched Specialist Griffith, a military policeman, to appellant's unit. Upon arriving at the unit and learning of the seizure of marijuana from appellant, Specialist Griffith apprehended him and advised him of his testimonial and counsel rights under Article 31, Uniform Code of Military Jus-

tice, 10 U.S.C. § 831, and *Miranda/Tempia*.[1] Appellant expressed a desire to remain silent and requested legal counsel. Thereupon, Griffith transported him to the military police station where he remained in custody awaiting interrogation by investigators of the Joint Drug Suppression Team (JDST). For reasons unexplained by the record, Griffith neglected to inform the agents of the JDST of appellant's request for counsel.

About three hours later, Agents Finch and Ortiz of the JDST began to interview the appellant. They too advised him of his testimonial and counsel rights after which he agreed to make a statement without legal counsel. Additionally, Agent Finch testified, "I specifically asked him during the rights advisement if he had been advised of his rights [by the military police] and requested a lawyer, and he replied no." Appellant then gave the agents a statement denying guilt.

As they did not believe him, the agents called in Agent Rubio, the senior investigator of the JDST, to continue the interview. Rubio also was unaware of appellant's earlier request for counsel. He did ascertain that appellant had been advised of his rights by Agents Finch and Ortiz; that he understood them; and that he still wished to make a statement without legal counsel present. During the interview, appellant confessed to the marijuana offenses.

## II.

■ At trial, appellant unsuccessfully moved to suppress his confession on the ground that he was denied counsel during the interrogation by the JDST agents. For the same reason, he now challenges the military judge's adverse ruling. I find his challenge to be without merit and that his confession was properly admitted into evidence.

The question presented for resolution is whether appellant voluntarily, knowingly and intelligently waived his right to have counsel present during the interrogation at which he confessed. Appellant maintains he did not so waive that right and cites the Supreme Court's holding in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), in support of his position. Specifically, he refers to the following language from that opinion as compelling us to rule in his favor:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Id.* at 484–85, 101 S.Ct. at 1884–1885 (footnote omitted). However,

> we do not hold or imply that Edwards was powerless to countermand his election or that the authorities could in no event use any incriminating statements made by Edwards prior to his having access to counsel. Had Edwards initiated the [subsequent] meeting ..., nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). Specialist Griffith testified that his role in investigating the case was a limited one. As the quantity of marijuana in appellant's possession was large, he believed (correctly) investigation of the case fell within the jurisdiction of the Criminal Investigation Division (in reality, it belonged to the JDST). Consequently, he did nothing more than determine if an offense was committed, effect apprehension of appellant, and accept custody of the evidence. He also gave appellant a rights warning, but his purpose in so doing was to conform to standard police operating procedure rather than to initiate an interrogation.

*Id.* at 485, 101 S.Ct. at 1885.[2]

At first glance, the evidence of record appears to support appellant under the *Edwards* criteria. First, his request for legal counsel to Specialist Griffith occurred during a custodial interrogation. *See United States v. Hartsock,* 14 M.J. 837 (A.C.M.R. 1982). Second, he was subjected to a subsequent interrogation by JDST agents without counsel being present or without being given a reasonable opportunity to obtain counsel. *See United States v. Goodson,* 14 M.J. 542 (A.C.M.R.), *pet. granted,* 14 M.J. 441 (C.M.A.1982); *United States v. Whitehouse,* 14 M.J. 643 (A.C.M.R.1982). Third, the second interrogation was not initiated by the accused. Although the Supreme Court manifested a distrust of such counselless interrogations, I do not believe that the Court established a rule of exclusion whenever and for whatever reason counsel was not provided. Rather, it held that waiver of counsel is "a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" *Edwards v. Arizona,* 451 U.S. at 482, 101 S.Ct. at 1884, *quoting with approval Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). Consequently, the fact that appellant did not initiate the interrogation with the JDST agents does not constrain me from determining whether he waived his right to counsel. My examination of the facts and circumstances of this case convinces me that *Edwards* does not require exclusion of the appellant's confession.

*Edwards* was designed to prevent the police from supervening an accused's assertion of the right to counsel through repeated confrontations. The decision recognizes that such confrontations emit a subtle pressure which, even with *Miranda* warnings, are likely to wear down the accused's original resistance to proceeding without counsel. Conversely, it does not purport to keep out evidence given to the police by an ac-

cused who has, by his own affirmative action, countermanded an earlier request for counsel. While *Edwards* holds that one of the ways an accused may accomplish this is by initiating the subsequent contact with the police, it does not hold that it is the only way. In my opinion, the situation evident in the instant case demonstrates another.

Here, well-meaning JDST agents acted with care and circumspection in an attempt to insure that appellant's rights were not violated. Having no knowledge of appellant's earlier request for counsel, they advised him of his rights and specifically asked him if he had previously requested counsel from other police officials. Upon receiving his negative reply, they proceeded to interrogate him. Their altruism, though commendable, does not, by itself, establish a valid waiver under *Edwards.* Good faith alone on the part of the police will not save evidence obtained in violation of *Edwards* from the exclusionary rule's ax. *White v. Finkbeiner,* 687 F.2d 885, 887 n. 9 (7th Cir. 1982). Something more is required. In the instant case, appellant lied to the JDST agents about his prior request for counsel. We do not know what appellant hoped to gain by such deception. Its effect was to prevent the JDST agents from obtaining counsel for him. If appellant did not obtain the services of legal counsel it was because of his own voluntary, knowing and intelligent act rather than because the police subtly induced him to change his mind. Accordingly, I conclude that he countermanded his original request for counsel and that his confession is admissible.

### III.

■ The appellant also contends that the military judge erred in failing to suppress the marijuana seized during the inspection. He maintains that the inspection was, in reality, a search without probable cause. I disagree.

Military Rule of Evidence 313(b) provides in part:

**2.** The issue of how an accused may initiate a conversation with the police was recently ar-

gued before the Supreme Court. *Oregon v. Bradshaw,* 33 Crim.L.Rept. (BNA) 4005.

An inspection also includes an examination to locate and confiscate unlawful weapons and other contraband when such property would affect adversely the security, military fitness, or good order and discipline of the command and when (1) there is a reasonable suspicion that such property is present in the command or (2) the examination is a previously scheduled examination of the command. An examination made for the primary purpose of obtaining evidence for use in a trial by court-martial or in other disciplinary proceedings is not an inspection within the meaning of this rule.

The evidence of record establishes that on the morning of 8 July 1981, appellant's company commander, Captain Allen, ordered a health and welfare inspection of a portion of the company billets. In accordance with past practice, he directed that the inspection be limited to an examination of those rooms ending in the number "4." Appellant's room was among those to be inspected. Since assuming command of the company fifteen months earlier, Captain Allen had ordered eleven such inspections. In those months when an inspection was not conducted, it was because field exercises or other important training took precedence. His principal reasons for the inspection included examining serviceability of individual equipment, general cleanliness and looking for missing government property and prohibited items, such as weapons and drugs. His reasons echoed those enumerated in a battalion policy directive which required that monthly inspections be conducted primarily "to determine and evaluate the fitness and readiness of unit personnel and their equipment and to remove those items detremental [sic] to their health and welfare." Captain Allen acknowledged that if drugs were seized during the inspection they could be introduced into evidence during subsequent judicial proceedings. We hold that the foregoing evidence establishes that the seizure of the marijuana from appellant's room was pursuant to a previously scheduled examination of the command to locate and confiscate contraband. Therefore, the military judge was correct in de-

termining it to be admissible as having been seized during a lawful command inspection. *See United States v. Middleton,* 10 M.J. 123 (C.M.A.1981).

I have considered the remaining assignment of error and find it also to be without merit.

Accordingly, the findings of guilty and the sentence are affirmed.

FOREMAN, Judge, concurring:

I concur. While *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), prohibits any further attempts to interrogate a suspect who has invoked his right to counsel, *Edwards* did not contemplate that a suspect would deliberately mislead the police by concealing his earlier request for counsel. Furthermore, *Edwards* does not prohibit all further conversations with a suspect on collateral or administrative matters. Nor does it prohibit asking a suspect whether he has been advised of his rights or requested counsel. *See United States v. Goodson,* 14 M.J. 542, 544–45 (A.C.M.R.), *pet. granted,* 14 M.J. 441 (C.M.A.1982). Accordingly, I find nothing improper in Special Agent Finch asking the appellant whether he had been advised of his rights or requested counsel. When the appellant falsely replied in the negative, he, not the police, caused the further interrogation. In my view the appellant's deception was tantamount to countermanding his earlier request for counsel. Accordingly, I join in affirming the findings of guilty and the sentence.

O'DONNELL, Senior Judge, concurring in part and dissenting in part:

I agree as to the legality of the inspection. I disagree, however, as to the admissibility of the statement.

*Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), is yet another decision by the Supreme Court designed to give practical effect to its holding in *Miranda v. Arizona,* 384 U.S. 436 [86 S.Ct. 1602, 16 L.Ed.2d 694] (1966), that an accused has a right to have counsel present

during a custodial interrogation.[1] To this end, the Court held that an accused

> having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

*Edwards v. Arizona,* 451 U.S. at 484–85, 101 S.Ct. at 1885.

The Court in *Edwards* concluded that an accused could countermand his request for counsel. But, as I read the opinion, this countermanding must be accomplished within the framework of the holding just quoted. That is, the accused must initiate the subsequent interrogation. Not only must the accused initiate the interrogation, there must also be a showing that

> a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.

*Id.* at 486 n. 9, 101 S.Ct. at 1885.

As the appellant in this case did not initiate the interrogation, there was no countermanding of his previous request for counsel and the appellant was not subject to further interrogation in the absence of counsel. His statement taken without the presence of counsel therefore was inadmissible. The only difference between this case and *Edwards* is that here the appellant purportedly denied to Finch that he had been advised of his rights by Griffith, the apprehending policeman.[2] I consider this denial to be inconsequential in view of the policy considerations in *Edwards,* videlicet, protection of an accused's right to counsel. Unless the act of the appellant in denying that he was advised of his rights can be equated to an initiation of the subsequent interrogation—a conclusion unsupported by logical analysis—*Edwards* precludes further questioning. This result is not changed by the fact that the police were "well-meaning" and may have acted with "care and circumspection" and in good faith. In this respect, this case is no different from *Edwards,* where the interrogators did not know that Edwards had previously requested counsel.

A recent decision from the Seventh Circuit illustrates the thrust of the *Edwards* holding. In *White v. Finkbeiner,* 611 F.2d 186 (7th Cir.1979), the court first held that the prosecution may show waiver after a request for counsel has been made even if the police initiate further interrogation. In finding waiver, the court relied in part on the fact that the police who conducted the interrogation were unaware of White's previous request for counsel. The Supreme Court remanded the case to the Seventh Circuit for consideration in light of *Edwards,* which had been decided in the interim. *White v. Finkbeiner,* 451 U.S. 1013, 101 S.Ct. 3000, 69 L.Ed.2d 385 (1981). Upon further consideration, the Seventh Circuit reversed its earlier decision, holding that its previous conclusion that waiver may be shown even if the police initiate further interrogation was clearly in conflict with *Edwards. White v. Finkbeiner,* 687 F.2d 885 (7th Cir.1982).

As to the issue of the interrogator's ignorance of White's previous request for counsel, the court noted that to hold the statement admissible for that reason would be tantamount to creating a good faith exception to the *Edwards* rule and might permit "relatively easy circumvention of that

---

1. *Miranda* itself held that if an accused requests counsel, "the interrogation must cease until an attorney is present." *Miranda v. Arizona,* 384 U.S. 436, 471, 86 S.Ct. 1602, 1626, 16 L.Ed.2d 694 (1966).

2. Finch first testified that the appellant told him that Griffith had not advised him of his rights and that he did not inform Griffith that he wanted counsel. In subsequent testimony, however, Finch clarified his earlier testimony. In essence, he stated that he did not ask the appellant if he had previously requested counsel, only whether Griffith had advised him of his rights. The appellant, according to Finch, answered no to that question. For some reason, the appellant was not questioned on this point during his testimony.

rule." This the court refused to do. *Id.* at 887 n. 9.

I would hold the appellant's statement inadmissible, set aside the conviction and direct a rehearing.

Major Robert C. Rhodes, JAGC, Captain James A. McAtamney, JAGC, and Captain L. Sue Hayn, JAGC, were on the pleadings for appellant.